WILDMAN, In re. See Case No. 2,959b.

## Case No. 17,654.

WILDMAN v. TAYLOR et al.

[4 Ben. 42.] [1]

District Court, D. Connecticut. Feb., 1870.

BANKRUPTCY—CONSTRUCTION OF INSTRUMENTS EXECUTED AT THE SAME TIME—WORDS OF LIMITATION AND CONDITION—FORFEITURE OF ESTATE—DEMAND OF RENT.

1. Where two instruments are executed at the same time, between the same parties, relative to the same subject matter, to effectuate one object, they are to be taken in connection, as parts of the same instrument.

2. H. S. and E. S. were brothers, and formed a partnership on August 12, 1855, for the purpose of manufacturing hats. H. S. was the owner of a factory and a lot of land on which it was situated, and E. S. was to buy of H. S. one-half of the factory and machinery for $6,000. They continued in business together till October 21, 1856, when H. S. died. A few hours before his death, he executed and delivered to E. S. a quitclaim deed of one-half of the land in question, with the factory, etc., and also "all the machinery situated in said factory which was possessed and owned by me before the 12th of August, 1855." He also executed to E. S. a lease for fifteen years, of all his "right, title and interest in and to certain property," described in the above deed for one-half of said property, "it being the remaining one-half of a certain tract of land, &c., with a hat manufactory and other buildings thereon standing, with all the water and mill privileges connected therewith; also all the machinery situate and now being in said manufactory." The rent was $700 a year, and the lease provided that, "in default of payment for any year during said term, said lease is to be void, and said property is at once to revest in me, or my heirs or assigns, without notice to the lessee, in the same manner as if this lease had not been given." After the death of H. S., E. S. continued in possession of the whole property till December 9, 1864, when he conveyed the whole unexpired term of the lease to S. & B., and on September 14, 1865, he quitclaimed to them all his right, title and interest in the property. S. & B. mortgaged the property, and were thereafter declared bankrupts, and an assignee was appointed. H. S., by will, left the bulk of his property to his daughter T. for her life, and on her death, to her children. There was a failure to pay part of the rent due on October 21, 1867, and a failure to pay the rent due on the 21st of October, 1868, and the agent of the devisees made a demand on that day, generally, for the rent due.

3. The assignee in bankruptcy, claiming the right to the possession of the property, filed a bill in equity against all parties. Held, that the deed and lease must be construed together, and that their effect was to convey to E. S. one-half of the whole property absolutely, and the other half for fifteen years, subject to the rent specified.

4. The assignee, therefore, would be entitled to all the estate, both under the deed and lease, (subject to intermediate incumbrances,) which the bankrupts received from E. S.

5. The words in the lease as to the non-payment of rent were not words of limitation, but a condition by which the lease might become void at the option of the lessor.

6. The devisees, having succeeded to the rights of the lessor, were entitled to avoid the

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

lease, on the non-payment of rent, on October 21, 1868.

7. To work a forfeiture for non-payment of rent, there must be a demand of the precise sum due.

8. No such demand was made here, and the lease was therefore not avoided.

9. The assignee was therefore entitled to the immediate and exclusive possession of the property, both real and personal.

In equity.

Nelson L. White and D. B. Booth, for plaintiff.

W. F. Taylor and Origen S. Seymour, for defendants Taylor and wife and children.

Averill & Brewster, for defendants James S. Benedict and Ezra S. Benedict.

SHIPMAN, District Judge. This was a bill in equity, brought by the assignee [Frederick S. Wildman] to have settled and determined conflicting claims to various portions of the property pertaining to the bankrupt estate. All the parties to the bill are residents of this state, except James Benedict and Ezra G. Benedict, who reside at Albany, in the state of New York, and Charles H. Benedict, who resides in the city of New York; but all the respondents residing out of this state have come in and submitted their claims to the judgment of this court.

As the facts bearing upon portions of the controversy are somewhat complicated, some of them dating back several years, a chronological statement of them will aid us in presenting the questions involved.

The main portion of the property in dispute consists of an establishment for the manufacture of hats, situated in Danbury, in this state. On the 21st of October, 1856, Hiram L. Sturdevant was the owner of this property. On that day, he executed and delivered to his brother, Elijah Sturdevant, a quitclaim deed, containing the following descriptive clause: "All right, title, interest, claim and demand whatever, which I, the said releasor, have or ought to have in or to the one-half of a certain tract of land situate in said Danbury, containing two acres, more or less, with a hat factory and other buildings standing thereon, and all the mill privileges connected therewith; bounded north on land of the heirs of Caleb Benedict, deceased; east and south on land of the heirs of Talman Wildman, deceased; and west on my own land. Also all the machinery situated in said factory which was possessed and owned by me before the 12th day of August, 1855."

On the same day, Hiram L. Sturdevant also executed and delivered to his brother Elijah a lease, the material clauses of which are as follows: "I, Hiram L. Sturdevant, of Danbury, etc., for the consideration of one dollar, received of Elijah Sturdevant, etc., have demised, leased, and to farm let, and do by these presents demise, lease and to farm let all the following described property, to wit: all the right, title and interest that I have in and to certain property situate in said Danbury, and particularly described in a deed from me to said Elijah, this day executed, for one-half of said property, it being the remaining one-half of a certain tract of land, situate in said Danbury, containing about two acres, with a hat manufactory and other buildings thereon standing, with all the water and mill privileges connected therewith; also, all the machinery situate and now being in said manufactory. Also, a certain dwelling house, situate near said factory, now occupied as a boarding house, bounded, etc. To have and to hold unto the said Elijah, his heirs and assigns, for the full term of fifteen years from this date, and till the same shall be complete and ended; the said Elijah paying to me, or my heirs or assigns, executors or administrators, the yearly rent of $700 during the continuance of said lease; and in default of said payment for any year during said term, said lease is to be void, and said property is at once to revest in me, or my heirs or assigns, without notice to the said Elijah, in the same manner as if this lease had not been given."

It is proper here to state the circumstances under which these papers were executed. Hiram L. and Elijah Sturdevant were brothers. The former, prior to 1855, and down to the execution of the deed above named, was the sole owner of the property described in the deed, and of the real estate and most of the machinery referred to in the lease. In 1855, his brother Elijah came from Brookfield to Danbury, and on the 12th of August, of that year, they formed a copartnership for the purpose of manufacturing hats at the factory in question. The arrangement between them was that they were to be equal partners, and that Elijah should purchase of Hiram L. one half the factory and machinery, at the price of $6,000. They immediately went into business with this understanding, but the deed was not made till the 21st of October, 1856. Whether the consideration was all paid prior to that time does not appear, but that is not important. This deed was the formal consummation of the bargain and sale. At the time the deed, as well as the lease, was executed, Hiram L. the grantor was in extremis, and died a few hours thereafter.

Upon the death of his brother, Elijah Sturdevant was in possession of the whole property described in the deed and lease, and continued in possession until December 9, 1864, when he conveyed the unexpired term of the lease to Sturdevant and Benedict, the present bankrupts, and surrendered possession to them. On the 14th of September, 1865, Elijah Sturdevant conveyed, by quitclaim deed, all his interest in the real estate and machinery to Sturdevant and Benedict. The latter continued in possession till the time, or about the time when the proceedings in bankruptcy were commenced.

On the 1st day of June, 1868, Sturdevant and Benedict mortgaged the factory premises and machinery to James Benedict and Ezra

G. Benedict of Albany, as security for a loan of $20,000. On the 2d of June, 1868, they also attempted to mortgage the same property to Charles H. Benedict of New York, as security for moneys advanced or to be advanced, but to this deed there was but one witness, and it is therefore invalid under the statute of this state, and may be laid out of the case.

As already stated, Hiram L. Sturdevant, the original owner of the hat manufactory, died on the 21st of October, 1856, just after having executed the deed and lease to his brother Elijah, already referred to. By his will he left the bulk of his estate, including that portion of the factory and machinery which was not embraced in his deed to Elijah, to his daughter Sarah L. Taylor during her life, and at her death to her children.

The will was proved October 24, 1856. The executors named in the will having declined to act, the court of probate appointed Elijah Sturdevant and James S. Taylor administrators with the will annexed. What steps were taken by the administrators in the settlement of the estate does not appear, and need not be determined in the present case.

The first question in order is that which relates to the true construction of the deed and lease of Hiram L. Sturdevant to Elijah Sturdevant. Literally read, these instruments are inconsistent each with the other. In the deed, after the description of the real estate, these words follow: "Also all the machinery situated in said factory, which was possessed and owned by me before the 12th day of August, 1855." In the lease, following the description of the real estate, are the words, "also all the machinery situate and now being in said manufactory." Of course these words cannot have a literal operation in both instruments. It is conceded that the machinery in the factory before the 12th of August, 1855, was all owned and possessed by Hiram L. Sturdevant, the grantor in the deed. He could, undoubtedly, have conveyed it all in the same instrument in which he conveyed one-half of the real estate, though, in the absence of any explanation, it would have been a singular and unusual transaction. But the words in the lease are even more comprehensive than those in the deed, "Also all the machinery situate and now being in said manufactory." These words literally cover, not only all the machinery in the factory on the 12th of August, 1855, but all that had been added by the partnership subsequently. It is contended by the assignee that the language of the lease must be restricted, and held to convey the use only of so much of the machinery as the lessor at that moment had an interest in. But how are we to determine what interest the lessor then had? That can be done in no other way than by reference to the deed. The assignee insists that the court should look at the deed, give its words a literal interpretation, and thus restrict the similar clause of the lease to the interest of the lessor in the machinery which the partnership added after the 12th of August, 1855. This statement of the

point shows that the two instruments should be compared and construed with reference to each other, unless some stubborn rule of law prevents. The true doctrine on this subject is well stated by Hosmer, C. J., in Isham v. Morgan, 9 Conn. 374, 378, where he says: "The established rule is this: Where two instruments are executed at the same time, between the same parties, relative to the same subject matter, to effectuate one object, they are to be taken in connection as parts of the same agreement." This proposition is amply sustained by the authorities cited in its support in the opinion from which it is taken. To those may be added King v. King, 7 Mass. 496; Clap v. Draper, 4 Mass. 266; Jackson v. McKenny, 3 Wend. 233. The present case comes within all the conditions of the rule. The instruments were executed at the same time, between the same parties, relate to the same subject matter, and were to effectuate the same general purposes which both had in view. The deed was clearly intended to convey one-half of the real estate and machinery, as the latter stood on the 12th of August, 1855, in pursuance of the contract of partnership entered into at that date between the grantor and grantee. The object was to consummate, by formal conveyance, that precise contract, which embraced half of the real estate, and half of the machinery, and only half. The object of the lease was to confer the right of possession and use of the other half of both the real estate and machinery, including the lessor's portion of the latter, which had been added after the 12th of August, 1855. The reason is obvious. The partnership had been of short duration, and the establishment which was to be the principal instrument of carrying it on, had been recently completed. Hiram L. Sturdevant saw that he was near his end. His death would dissolve the partnership, and if no provision were made, by which the control of the property would pass to his brother and surviving partner for some fixed period of time, the whole establishment might have to be broken up and sold. The lease, therefore, of the other half was made. When the two instruments are compared with each other, and read in the light of the relation of the parties and the circumstances in which they were placed, there can be no doubt that the object in executing the deed and lease was to convey absolutely one-half of the whole property, the exclusive title of which was in the grantor and lessor, to his brother Elijah, and the other half to him for fifteen years, subject to the rent specified. This construction does complete and exact justice between the parties, and is consonant with the principles of equity as well as the rules of law. But on the construction contended for by the assignee, by which the whole of the machinery in the factory on the 12th of August, 1855 (and this embraced nearly all there was at the time the deed was executed), is to be deemed as passing to Elijah Sturdevant, the latter would obtain half of such machinery without any consideration whatever. He was to pay $6,000, and receive a conveyance of one-

half of the establishment as it stood when the bargain was made and the partnership commenced, not one-half of the real estate and the whole of the machinery. Had there been no other instrument of conveyance but the deed, and the construction of the assignee were the correct one, equity would have relieved the other half of the machinery on the ground of mistake, on the undisputed facts as they now appear. But, in my view, the whole difficulty is dissipated by comparing the deed and the lease in the light of surrounding circumstances. The latter instrument refers in terms to the former, and, although that and the deed are very imperfectly and inartificially drawn (being done in haste for execution by a dying man), I think it is apparent on the face of the documents themselves, that one-half the property was intended to be conveyed, absolutely, and the other half leased for the term of fifteen years. The two instruments thus embraced the whole property, except the half of the machinery added after the 12th of August, 1855, which belonged to the grantee and lessee, and upon which neither deed nor lease was designed to, or could, operate. In this view, were there nothing else in the case, of course the assignee would be deemed to have taken all the estate, both under the deed and lease, subject to intermediate incumbrances, which the bankrupts received from Elijah Sturdevant, which was an absolute title to one-half, under the deed, and the right of possession and use of the other half under the lease to the 21st of October, 1871, when the fifteen years will expire. But at this point the respondents, Taylor, his wife, and minor children, interpose the claim that the lease has become forfeit for the non-payment of stipulated rent. This is the next question in order.

The language of the lease upon which this question is raised is as follows: "To have and to hold unto the said Elijah, his heirs and assigns, for the full term of fifteen years from this date, and till the same shall be complete and ended, the said Elijah paying to me or to my heirs or assigns, executors or administrators, the yearly rent of $700, during the continuance of said lease, and in default of said payment, for any year during said term, said lease is to be void, and said property is at once to revest in me or my heirs or assigns, without notice to the said Elijah, in the same manner as if this lease had not been given." It is contended by the devisees of the original lessor, that this clause of the lease amounts to a limitation, by the terms of which the estate was absolutely to cease and determine in the event of a failure to pay the rent stipulated, on or before the 21st day of October in any given year, and that no act on the part of the lessor, or his heirs or assigns, was necessary to entitle him or them to immediate possession. The assignee, on the other hand, insists that it is simply a condition, expressing a contingency, the happening of which should render the estate voidable at the option of the lessor. The latter view I think the correct one. "Words of limitation mark the period which is to determine the estate, but words of condition render the estate liable to be defeated in the intermediate time, if the event expressed in the condition arises before the determination of the estate, or completion of the period described by the limitation. The one specifies the utmost time of continuance, and the other marks some event, which, if it takes place in the course of that time, will defeat the estate. The material distinction between a condition and a limitation consists in this, that a condition does not defeat the estate, although it be broken, until entry by the grantor or his heirs." 4 Kent, Comm. 123, 127, and cases there cited. This is the doctrine of the common law, which now prevails in this state, and must govern this case. Bowman v. Foot, 29 Conn. 331. The only absolute limitation in this lease is in the term of fifteen years. To this there is a condition annexed, that by failure to pay the rent any given year, the term should be cut short, and the lease become void. But it is well understood doctrine, that such stipulations are now always construed to mean that the lease shall become void at the option of the lessor. Bowman v. Foot, supra; Clark v. Jones, 1 Denio, 516; Jones v. Carter, 15 Mees. & W. 718.

In this case there was a failure to pay the rent due on the 21st of October, 1868. The devisees having succeeded to the rights of the lessor were, therefore, entitled to avoid the lease. The provision for a forfeiture was, in the eye of the law, and of common sense, inserted exclusively for the benefit of the lessor and those who might hold the fee under him. Now what steps were necessary on the part of these devisees in order to avoid this lease and secure themselves the right of immediate possession? Storrs, C. J., in Bowman v. Foot, already cited, remarks: "If the tenant's right is thus voidable only, the option to avoid must be exercised under the contract, and according to legal usage." This legal usage is to be derived from the doctrines of the common law. In Connor v. Bradley, 1 How. [42 U. S.] 211, 217, the court say: "It is a settled rule at the common law, that where a right of re-entry is claimed on the ground of forfeiture for non-payment of rent, there must be proof of a demand of the precise sum due, at a convenient time before sunset, on the day when the rent is due, upon the land, in the most notorious place of it, even though there be no person on the land to pay." The same doctrine is laid down in Tayl. Landl. & Ten. (3d Ed.) p. 346, § 493, and in Van Rensselaer v. Jewett, 2 Comst. [2 N. Y.] 147; McCormick v. Connell, 6 Serg. & R. 151, 153. In the present case, there was an attempt to make a demand on the part of the devisees, by an agent sent to the premises for that purpose on the afternoon of October 21, 1868. The particulars of that

attempt were detailed by the witnesses on the hearing, and although it is difficult, in view of this evidence, to repress the suspicion that there was collusion between the agent of the devisees and Elijah Sturdevant, one of the administrators of the original lessor, and Edgar Sturdevant, one of the bankrupts, yet, I do not determine the point on that ground. The demand did not conform to the settled rules of law. It was not for the precise sum falling due on that day. The agent could not make such a demand, for he testified that he did not know what amount was due. He simply made demand generally for the rent due. This, in point of fact, included not only the amount falling due that day, but also an unpaid balance on a previous year. In no aspect was this requirement of the law complied with. The lease was, therefore, not avoided, and the unexpired term, with all the rights which belong to it, passed to the assignee, and is to be disposed of for the benefit of the bankrupt estate.

It follows, of course, from this view, that the assignee is entitled to the immediate and exclusive possession of this property, both real and personal. The lease also covers a small piece of land, with the boarding-house standing thereon, of which he is entitled to the possession. This land seems no way in controversy here, as I understand it is conceded by all parties in interest that it was originally purchased as the joint property of Hiram L. Sturdevant and his brother Elijah, and that the fee of the latter's half passed, through the bankrupts, to the assignee. The other half is embraced in the lease, and consequently the assignee is entitled to the use and possession of the whole during the unexpired term.