Bowman *v.* Foot.

# SUPREME COURT OF ERRORS.

## NEW HAVEN COUNTY, SEPTEMBER TERM, 1860.

Present,

STORRS, C. J., HINMAN, ELLSWORTH AND SANFORD, Js.

---

### WILLIAM F. BOWMAN *vs.* ENOS FOOT.

Our statutes with regard to the recovery of leased premises, except in the specific remedy which they provide and the notice to quit prescribed, do not dispense with the requirements of the common law on the subject.

A lease for a term of years, under which the rent was payable quarterly on certain days named, contained the following condition :—" Provided however, that if the lessee shall neglect to pay the rent as aforesaid, then this lease shall thereupon, by virtue of this express stipulation, expire and terminate ; and the lessor may, at any time thereafter, re-enter said premises, and the same possess as of his former estate." Held,

1. That the terms *expire and terminate* were merely equivalent to the more common expression, *shall become void.*

2. That the lease, by the non-payment of rent, did not become void, but only voidable at the option of the lessor.

3. That to take advantage of his right to avoid the lease, it was necessary for the lessor, 1st. To made demand of the rent, on the day it fell due, on the premises, and at a convenient hour before sunset. 2d. Upon neglect to pay the rent, to make a re-entry on the premises or in some other positive manner assert the forfeiture of the lease. [Per Storrs, C. J., and Hinman, J. ; Ellsworth and Sanford, Js. dissenting.]

Whether, after an entry for non-payment of rent, the acceptance of the rent is a waiver of the forfeiture : *Quere.* The current of authorities is against such a doctrine.

WRIT of error from the judgment of a justice of the peace, upon a summary process brought by the present defendant for the recovery of certain premises leased to the present plaintiff. The writ of error was brought to the superior court and by that court reserved for the advice of this court. By the bill

of exceptions allowed by the justice, and upon which the only questions in the case arose, the following facts appeared.

The lease under which the defendant in the original suit held the premises was (so far as important to the case,) as follows:—

" This indenture made by and between Enos Foot of the first part, and William F. Bowman of the second part, witnesseth, that the said party of the first part has leased and does hereby lease to the said party of the second part, the house and premises known as the Assembly House, in the city of New Haven, on the corner of Court and Orange streets, for the term of three years, from the first day of April, 1858, for the annual rent of five hundred and fifty dollars, payable in quarter-yearly payments of one hundred and thirty-seven $\frac{50}{100}$ dollars each; to wit: on the first days of July, October, January and April in each year.

" And the said party of the first part covenants with said party of the second part, that he has good right to lease said premises in manner aforesaid, and that he will suffer and permit said party of the second part, (he keeping all the covenants on his part, as herein after contained,) to occupy, possess and enjoy said premises during the term aforesaid, without hindrance or molestation from him or any person claiming by, from or under him.

" And the said party of the second part covenants with the said party of the first part to hire said premises and to pay the rent therefor as aforesaid. *   *   *   *   *

" *Provided, however*, and it is further agreed, that if said party of the second part shall neglect to pay the rent as aforesaid, * * * * then this lease shall thereupon, by virtue of this express stipulation therein, expire and terminate, and the party of the first part may, at any time thereafter, re-enter said premises, and the same have and possess as of his former estate.

" And it is further agreed between the parties hereto, that whenever this lease shall terminate, either by lapse of time or by virtue of any of the express stipulations therein, that said

lessee hereby waives all right to any notice to quit possession, as prescribed by the statute relating to summary process. * *

" And this agreement in writing is, at all times during the period the lessee shall occupy said premises, to be referred to as evidence of the conditions, stipulations and agreements under which he occupies the same."

It was found by the court that there was due to the plaintiff from the defendant, as rent under the lease, on the first day of April, 1859, the sum of $137.50, and that the defendant did not in fact pay this sum on that day. On this point the court found more particularly, that on the first day of April the plaintiff had an interview with the defendant, in which the parties conversed about the rent and about the payment of a certain note for $400 then due from the defendant to the plaintiff, and that the plaintiff did not then in fact waive the payment of the rent at that time or excuse the defendant from the immediate payment thereof, but that the defendant understood the plaintiff in that conversation expressly to excuse him from such immediate payment and to consent that he might pay the rent at a subsequent day ; and the court found that, in consequence of such understanding, the defendant omitted to pay the rent on that day. The court further found that, on the 4th day of April, 1859, and before suit was brought, the defendant tendered to the plaintiff as rent the sum of $150, and that the plaintiff accepted it as rent to April first, and gave a receipt therefor on account, but that the plaintiff in accepting it did not expressly waive any right which he then had (if he then had any) to prosecute and maintain his suit, but, on the contrary, then expressly declared that he did not waive any such right.

The plaintiff claimed, upon the facts so found by the court, that the law was so that the defendant had, within the legal intent and meaning of the lease, " neglected " to pay the rent on the first day of April, and that, consequently, the lease did, on the same day, expire and terminate ; but the defendant contended that upon the facts the law was so that he did not within such legal intent and meaning " neglect " to pay the

rent. Upon this question of law the court sustained the claim of the plaintiff, and held that, upon the facts so found, the defendant had "neglected" to pay the rent, and that consequently the lease did, on the first day of April, 1859, expire and terminate.

The plaintiff in error assigned as errors, 1st. That the justice held that the right to insist on the forfeiture for non-payment of the rent due on the 1st of April, 1859, had not been waived by the subsequent acceptance of the rent, on the 4th of April, 1859; and 2d. That the justice held that the lease was determined on the 1st of April, 1859, by the non-payment of the rent due on that day, when no demand had been made for the rent.

*Doolittle* and *Bronson*, for the plaintiff in error.

1. The lease in the present case was voidable and not void. It is a case of a condition and not a limitation. Remarks of Williams, C. J., in *Todd* v. *Hall*, 10 Conn., 560. To take advantage of the condition, on the part of the landlord, there was necessary, at common law, 1st. A demand of the rent on the very day it fell due. 2 Stephen N. P., 1477. 1 Hilliard Ab., ch. 16 § 61. *Jackson* v. *Kipp*, 3 Wend., 230. *Jackson* v. *Harrison*, 17 Johns., 66. *Van Renssalaer* v. *Jewett*, 2 Comst., 141. 2d. A re-entry. *Stuyvesant* v. *Davis*, 9 Paige, 427. *Van Renssalaer* v. *Ball*, 19 N. York, 100. *Van Renssalaer* v. *Jewett*, supra. *Chalker* v. *Chalker*, 1 Conn., 79. *Bowen* v. *Bowen*, 18 id., 535. In all cases where a demand and entry have been held not to be necessary, the statute 4 Geo. II ch. 28, has been enacted. This is so in New York. *Van Renssalaer* v. *Ball*, supra. This statute has not been enacted in this state, and is no part of our common law. Trumbull, J., in *Chalker* v. *Chalker*, 1 Conn., 90. Waite, J., in *De Bouchet* v. *Wharton*, 12 id., 538. A demand and entry are both necessary under our law then, unless some statute shall have done away with them. Our earlier statute with regard to summary process applied only to leases that expire by lapse of time. *De Bouchet* v. *Wharton*, 12 Conn., 532. No demand or entry was ever necessary at common law

Bowman *v.* Foot.

with regard to leases that expire through lapse of time. The present statute of summary process was enacted in consequence of the decision of *De Bouchet* v. *Wharton*. Before that decision it was doubtful whether or not the statute ap_ plied to leases that should terminate by reason of any express stipulation. The lease in question recognizes the necessity of an entry. Such has always been the form in this state.

2. Where there is a forfeiture of an estate of freehold upon condition for non-payment of rent, a subsequent acceptance of the rent is in law a waiver of the forfeiture. *Chalker* v. *Chalker*, supra. The same doctrine is applicable to leases for a term of years. *Coon* v. *Brickett*, 2 N. Hamp., 163. *Atkins* v. *Chilson*, 11 Met., 112. The lessor ought not to have both the rent and the forfeiture. Although he may at his election sue for rent or enter for non-payment of it by virtue of the condition, yet he can not do both. 1 Hilliard Ab., ch. 16, § 65. To the statute 4 Geo. II, there was added a clause that if the lessee should pay the rent and costs at any time before judgment, the proceedings should be stayed. But this was merely declaratory of the common law, and is the law here although that statute has never been adopted. Opinion of Woodbury, J., in *Coon* v. *Brickett*, 2 N. Hamp., 165.

*C. R. Ingersoll*, for the defendant in error.

1. Neither a demand of the rent, nor a re-entry, was necessary to enable the lessor to take advantage of the forfeiture. The case is not to be governed by the rules of the common law, which are dispensed with by our statute provisions on the subject of the recovery of leased premises. We are to look merely at the contract which the parties themselves have made, and are to give it a fair and not a technical construction. In *White* v. *Bailey*, 14 Conn., 271, the court say that the whole object of the proceeding under the statute is to *enforce the contract of the parties*. They have not stipulated in the contract for a demand, and the provision with regard to the right of re-entry on the part of the lessor, so far from contemplating the technical re-entry required by the common law, expressly provides that the lessor may re-enter *at any*

*time thereafter.* And while the contract does not in terms or by any necessary implication require a demand of the rent, it does provide in the most explicit language that if the tenant shall "neglect" to pay the rent, the lease shall, *thereupon,* by virtue of the express stipulation therein, *expire and terminate.* Even at common law a demand and its attendant formalities could be dispensed with by the covenant of the parties. And even at common law a re-entry was not necessary in the case of a lease for a term of years. The tenant not being in by livery of seizin, it was not necessary that the landlord should resort to an actual re-entry to recover his seizin. Comyn on Land. & Tenant, 327. But if a demand is necessary, it will be presumed to have been proved. The record does not show that no demand had been made. On the contrary it does show that the parties had a conversation about the rent on the first day of April, and that the plaintiff did not then in fact waive the payment of the rent at that time, or excuse the defendant from immediate payment. It is difficult to conceive how such a conversation could have taken place without a demand being made, especially after a finding by the court of the issue in favor of the plaintiff.

2. The right to insist on a forfeiture was not waived by the acceptance of the money on the 4th of April. The finding is, that the payment was made by the defendant, and accepted by the plaintiff, with the express declaration by the plaintiff that he did not waive any such right. But, without this express understanding, an acceptance of rent would not have been, *of itself,* waiver of the forfeiture, but matter of evidence only, even if the rent accepted had accrued subsequent to the forfeiture. *Cheny* v. *Batten,* Cowper, 243. But it is not even evidence of a waiver where the rent accepted was rent due at the time of the forfeiture. *Jackson* v. *Allen,* 3 Cowen, 220.

STORRS, C. J. We do not find it necessary to decide whether, by the acceptance of rent which fell due before the alleged determination of the lease, the lessor waived his right to repossess himself of his estate. The current of authority

is against such a doctrine, although the opposite view of the law is not wholly unsupported.    *Coon* v. *Brickett*, 2 N. Hamp., 163.   It is generally maintained that an entry for condition broken ought not at all to affect the right to receive payment of a pre-existing debt, or the acceptance of payment of such a debt to affect the right of entry.

Nor do we determine whether the effect of such an acceptance can be qualified by a landlord's declaration, at the time of the acceptance, that he does not thereby mean to waive any right.   High authority sanctions the idea that the acceptance of rent accruing after condition broken, is in law a waiver of the forfeiture, and not evidence of such waiver merely.   It has also been said by judges of great eminence, that the right of the party who pays money to control its application, constrains the lessor who receives rent, tendered as such, to waive his claim of forfeiture.

The only point which we propose to settle as the law of the present case is, that, upon the facts stated, there was no legal determination of the lessee's estate.

Our statute of summary process recognizes no other termination of leases than such as is effected by force of the contract itself.   It supersedes none of the common-law remedies of the landlord, except in respect of the notice to quit and the form of procedure by action.   It follows that the question whether the tenant's rights have ceased, must be settled according to a common-law interpretation of the instrument of demise.   In some states, precise legal consequences are annexed by statute to the non-payment of rent, and the lessee is arbitrarily divested of his estate.   Our statutes contain no such provision.

The lease in evidence, was for three years, ending on the first day of April, 1861.   It contained a covenant of quiet enjoyment for the full term, with a qualification thus expressed:—"he [the lessee] keeping all the covenants on his part."   One of these covenants was for the payment of a quarterly rent upon certain quarter-days named.   In a subsequent part of the instrument is a proviso of the following tenor:—"Provided, however, that if the lessee neglects to pay

the rent, &c., then this lease shall thereupon, by virtue of this express stipulation therein, expire and terminate, and the party of the first part may, at any time thereafter, re-enter said premises, and the same have and possess as of his former estate." Again, the parties agree that so long as the lessee's occupation continues, (referring to a holding over by consent,) the written agreement shall be evidence "of the *conditions*, stipulations and agreements under which he occupies." It will be observed that the draughtsman of the contract designs to make use of technical language; and we have, in the first place, the clearest expression of a *condition* annexed to the covenant for the tenant's peaceable enjoyment of the estate. Next, we have the correct commencement of a condition—"provided however"—in the very stipulation which is said to terminate the lease, and we have, at the close of the stipulation, a re-entry clause—the apt formula to indicate how a forfeiture is to be enforced. Best, C. J., in *Willson* v. *Phillips*, 2 Bing., 13. Last of all, we have an explicit reference to the "conditions" of the instrument by that very name. It was the clear intent of the parties, whatever they may have supposed to be the legal consequences in detail of such a stipulation, to attach to the demise a condition for the lessor's benefit, upon the breach of which he was authorized to compel the tenant to submit to a forfeiture of his tenancy.

The legal interpretation of the instrument agrees with this manifest intent. There is no peculiar significance to the words "shall expire and terminate." They mean just as much, and just as little, as would the more common phrase, "shall become void," if inserted at the same place. Indeed it appears that both terms were employed together in a lease, the construction of which was the subject of determination in the case of *Jackson* v. *Harrison*, 17 Johns., 66. It was there provided that in case the rent should not be paid "it should be lawful for the lessor to re-enter," &c., and that "the lease and estate thereby granted should cease, determine and become utterly void, if the lessor should elect so to consider it." It is well understood that such expressions as these in leases for years do not designate the non-payment of rent as an event,

Bowman *v.* Foot.

like a death or a marriage, at the date of which an estate shall cease at all events.  If so, it would be in the power of the tenant, whenever his leasehold property became unprofitable or onerous, to relieve himself, at any pay-day, of his duty to retain it, by simply violating his own covenants.  Such a construction would be a plain perversion of the intent of the parties.  Accordingly, such stipulations are now universally taken to be for the advantage of the landlord.  "Void" means "voidable at his election."  *Jones* v. *Carter*, 15 Mees. & Wels., 718.  "Expire and terminate" is also an elliptical phrase, meaning "expire and terminate at the lessor's option."  This principle of construction leaves us nothing to do with a distinction, which is said to prevail between freehold interests and leases for years, requiring in one case, and not requiring in the other, an entry or claim to divest an estate wholly void by the breach of a condition.  In cases like the present, the estate is not wholly void by reason of a breach.  Its avoidance is contingent upon the acts of the reversioner.  Compare Shep. Touch., pages 139 and 184.  See also *Doe* v. *Bancks*, 4 B. & Ald., 401.  To ascertain the law of the case in hand, we must fill up the ellipsis.  The lease is to expire and terminate after non-payment, at the option of the lessor, who may then re-enter and annul the tenancy.

This rendering of the contract makes the duration of the lease contingent on the exercise by the lessor of his right to terminate it.  To denote how this is to be done, the instrument, fairly read, implies that a re-entry shall take place ; the usual technical mode prescribed in such contracts, indicating, in the case of estates less than freehold, not necessarily a literal entry, but some proceeding that should in a significant and decisive manner declare the forfeiture of the lease and assert the landlord's rights.

If a tenant's right is thus voidable only, the option to avoid must be exercised under the contract and according to legal usage.  The re-entry clause at all events creates a necessity for some positive act of the landlord to determine his tenant's estate.  In construing a lease, which authorized the lessor, upon the lessee's neglect to perform his covenants, to enter

without further demand and notice and to dispossess the latter, the supreme court of Massachusetts held that, inasmuch as a condition and not a limitation was created by the words employed, the estate of the tenant was not avoided by the neglect and could only be terminated by re-entry. *Fifty Associates* v. *Howland,* 11 Met., 99. Since the present case was decided, we have learned that this doctrine was involved in a decision of the Queen's Bench, (*Bishop* v. *Trustees of Bedford Charity,* 28 L. Jour., 215,) which was afterwards reviewed in the Exchequer Chamber. The doctrine itself does not appear to have been disputed. The defendants, owners of certain premises, were charged with being also in possession of them, and therefore liable for an injury suffered through their negligent condition. They had been leased for thirty years, subject to a right of re-entry for the non-payment of rent. The lessee failed to pay, went into bankruptcy, and left the occupancy of the premises to his weekly lodgers, who, as such, had of course no estate in them. From these persons the defendants, before the accident, had collected rent; and, after it, by a decree of the court of insolvency, obtained a surrender of the lease itself. To establish possession in the defendants, the judges of the Exchequer Chamber held that it must appear that they had by re-entry avoided their tenant's lease; that the receipt of rent from the weekly lodgers was no proof of re-entry, as it was consistent with the continued existence of the lessee's tenancy; and that as no demand was proved, the defendants had not asserted in fact their rights under the re-entry clause, and therefore could not be said to be in possession of their property at the time of the injury.

Where a lease is thus voidable, the landlord's option to avoid it should be exercised at the proper point of time and in the proper place; and above all, should be brought home to the tenant's knowledge through some unequivocal act, in order to certify to him that he is absolved from the further performance of a lessee's duties. " Where," to quote Baron Parke, " the terms of a lease provide that it shall be avoided by re-entry, either in the case of a freehold lease or a *chattel*

*interest,* an entry, or what is tantamount thereto, is indis-pensable."

Assuming then that it devolves on the lessor to take active measures to enforce his right of avoidance, we can not doubt that no such forfeiture should be suffered, as for a breach of duty, unless the performance of the duty is first demanded or requested. This principle is illustrated in a striking manner by the case of *Merrifield* v. *Cobleigh,* 4 Cush., 182, where the controversy related to a freehold estate. "Whenever," so ran the covenant, "the grantee shall neglect or refuse to sup-port" a certain fence, "this deed shall be void." The court held that, until there was a demand upon the grantee to repair the decayed fence, there was no breach of the condition. Yet literally, at the point of time when the grantee passively neglected that duty, his title failed. In the case before us no demand was made for the rent. The conversation of April 1st, 1859, however it was or ought to have been under-stood, is not claimed to have amounted, even by implication, to such a demand.

To prevent future litigation and to enable parties to make contracts adapted to the view which we take of the law, we go a step beyond the requirements of the case to speak of the formalities necessary to terminate a lease voidable on the non-payment of rent. We confess that we know of no new rules with which to instruct our judgment in this matter, and nat-urally adhere to the settled doctrines of the common law.

The case of *Jackson* v. *Harrison* was decided by a learned court, and has not been overruled by any of the higher tribu-nals of the state of New York. The lease in question was for seven years, and provided, as has been stated, for an avoid-ance and re-entry upon non-payment of rent. The court held that an entry was essential to the forfeiture claimed, and that none could be made without showing a demand of the rent due, upon the last day of payment, on the premises, and at a convenient hour before sunset. "The plaintiff," says Van-Ness, J., " equally fails in showing a right of entry by reason that the defendant did not pay the United States tax, because the indispensably necessary step of making a demand of the

defendant, within the period required by law in order to create a forfeiture, was not taken." This decision seems to be a true exposition of the common law.

A late New Hampshire case, *McQuesten* v. *Morgan*, 34 N. Hamp., 400, in its result accords with our present conclusion, and involves facts of the same general character.

There is error in the proceedings of the magistrate and we advise that his judgment be reversed.

In this opinion HINMAN, J., concurred.

ELLSWORTH and SANFORD Js., were of opinion that our statutes respecting leases had done away with the technical rules of the common law as to getting possession of leased premises, and dissented from the opinion of the Chief Justice.

Judgment reversed.