## Frank W. Thompson *vs.* Mary E. Coe.

Third Judicial District, Bridgeport, April Term, 1921.

Wheeler, C. J., Beach, Gager, Curtis and Burpee, Js.

An option to purchase leased premises "during the term," is not exercisable by the lessee as a matter of strict legal right, after a forfeiture of his lease has been declared by the lessor for the nonpayment of rent when due, notwithstanding the year for which the lease was given had not then expired; for when the lease falls the option to purchase falls with it.

The nonpayment of rent when due does not, under our law, automatically terminate a lease, but gives the lessor the right to terminate it by some definite, unequivocal act. The service of a notice to quit possession is such an act, and takes effect upon the date of service, not upon the day the tenant is required by the notice to quit.

A tender of rent after a completed forfeiture of the lease is ineffectual to change the legal relation of the parties then existing.

A judgment of the trial court will not be disturbed if any principle of law or equity will sustain it upon the facts found, although such principle was not specifically mentioned by the trial court in its decision.

Relief against forfeitures is a well-established branch of equity jurisdiction; and is available by a lessee whose lease has been unintentionally forfeited for the nonpayment of rent on the date that it fell due, if it is clear upon the facts that but for such relief he would be subjected to unwarranted hardship and serious pecuniary loss.

In the present case the plaintiff lessee, on March 13th, two days before
the rent became due under the days of grace, mailed the amount
in cash to the defendant, to avoid a long wait at the money-order
window of the post-office. Twelve days later he was informed by
the defendant's attorney that the rent was unpaid, but, believing
that it had been delivered and mislaid, requested the attorney to
ask his client to make search for it, and if not found to let him
know and he would pay it over again. As matter of fact the money
had been lost or stolen in the mail. He heard nothing further
until about April 9th, when he received a letter from the defend-
ant's attorney stating that the rent had not been paid and that a
notice to quit had been issued. Shortly thereafter the plaintiff
tendered the rent and also the purchase price of the premises, and
demanded a deed, but the defendant refused to accept the money
and also to execute a conveyance, and pending this suit brought
an action of summary process against the plaintiff upon which she
obtained judgment, but the issue of execution therein was enjoined
by the trial court upon a supplemental complaint filed by the
plaintiff in the present action. From a judgment for the plaintiff
the defendant appealed. *Held:*—

1. That upon the facts found the plaintiff was entitled to relief against
the forfeiture of his lease, and also to a deed of the premises.

2. That the plaintiff should have been required to pay interest upon
the overdue rent, but that the amount, only $3 or less, was too
trifling a matter to require the cause to be remanded for the cor-
rection of the judgment in this particular.

3. That the judgment rendered in the summary process action was
not a bar to the maintenance of the present suit, the Superior
Court having full power to determine the matters at issue whether
there had been a technical forfeiture at law or not.

4. That the desired corrections of the finding were either not supported
by the evidence, or were inconsequential in their effect.

Argued April 15th—decided October 28th, 1921.

SUIT for the specific performance of the defendant's
covenant to sell her real estate to the plaintiff, brought
to and tried by the Superior Court in New Haven
County, *Webb, J.;* facts found and judgment rendered
for the plaintiff, and appeal by the defendant. *No
error.*

The defendant leased 378 Elm Street, New Haven,
to plaintiff for two years from May 1st, 1917. A
provision of the lease was as follows: "Provided, how-

ever, and it is further agreed, that if the said rent shall remain unpaid 15 days after the same shall become payable as aforesaid, or if the said party of the second part shall not perform and fulfill each and every of the covenants herein contained to be performed by said party of the second part, then this lease shall thereupon by virtue of this express stipulation therein, expire and terminate, and whenever this lease shall so, or by lapse of time, expire and terminate, then the party of the first part may, at any time thereafter, re-enter said premises, and the same have and possess as of her former estate, and without such re-entry may recover possession thereof in the manner prescribed by the statute relating to summary process; it being understood that no demand for the rent and no re-entry for condition broken, as at common law, and no notice to quit possession as prescribed by said statute, shall be necessary to enable the lessor to recover such possession pursuant to said statute relating to summary process, but that all right to any such demand and any such re-entry and any such notice to quit possession, is hereby expressly waived by the said party of the second part." It was further stipulated and agreed in the lease "that the party of the second part [plaintiff] shall have the right to purchase said property at any time during the term of this lease for the sum of $5,500, and the party of the first part [defendant] agrees not to sell the property during said one year to any other person except the party of the second part." On March 7th, 1918, in consequence of differences that had arisen, the parties entered into another agreement relating to the premises leased, in which it was provided that "nothing herein contained shall be construed to change or affect said lease."

Subsequently, on May 5th, 1919, the defendant leased the premises to the plaintiff for one year from May

1st, 1919. This lease contained the same provision with reference to the nonpayment of rent as the first lease, and also contained an option to purchase similar to that of the earlier lease, in terms as follows: "And it is further stipulated and agreed that the party of the second part shall have the right to purchase said property at any time during the term of this lease for the sum of $5,500, and the party of the first part agrees not to sell said property during said one year to any other person except the party of the second part during his possession of same."

The plaintiff had been accustomed, with the acquiescence of the defendant, to transmit the rent each month by check or post-office order to defendant, and on March 13th, 1920, he sent by mail $30 in bills to defendant in payment of one month's rent, under the following circumstances: "In pursuance of this practice and custom of paying the rent, the plaintiff, on the 13th day of March, 1920, about eight o'clock in the evening, repaired to the post-office in New Haven with the intention of procuring a money order which he had frequently used in transmitting the rent before; but it was a stormy night and the plaintiff, being partially sick with a heavy cold, was anxious to get home as soon as possible, and finding a long line of applicants waiting at the money-order window, and that he would have to wait in all probability for a very long time, and being anxious to get home to West Haven, some four or five miles, he placed three bills of United States currency amounting to $30 in an envelope marked with a return card on the corner of it and directed as usual to the defendant in West Haven, town of Orange, and believed in good faith that the defendant would receive the same within the time limited for the payment of the rent, as provided for in the lease, Exhibit A. These bills so

mailed by the plaintiff, as aforesaid, were never received by the defendant." Defendant's attorney told plaintiff on March 25th, 1920, that the defendant had not received her rent for March, and plaintiff informed him he had sent it by mail and if defendant had not received it he would pay it over again, and requested him to inquire of defendant and inform him if she had not received it. The plaintiff on March 25th received by mail a demand from defendant's attorney for the March rent. By reason of what had occurred between plaintiff and defendant's attorney, plaintiff did nothing further until on or about April 9th, when he received another letter from defendant's attorney, stating that, "Mrs. Coe informs us that she has never received the rent due her from you for the month of March, and at her request we have had a notice to quit served upon you. May we not hear from you in the next two or three days concerning when you expect to vacate the premises?" About the same time he received the following:—

"Notice to Quit.

"Mr. Frank W. Thompson:

"I hereby give you notice to quit possession of the house, land, buildings, apartments, and premises, now occupied by you at number 378 Elm Street, in the town of Orange, State of Connecticut, on or before the 13th day of April, 1920.

"Dated at West Haven, Conn., this 7th day of April, 1920.

"Mary F. Coe,

"By Clark, Hall & Peck, her attorneys."

Plaintiff thereupon went to the attorney's office and tendered him $30 in payment of the rent for March, but the attorney, upon consulting defendant, informed plaintiff that defendant refused to take the money for the March rent. April 12th, 1920, plaintiff

tendered defendant $60 for rent for March and April, which defendant refused, and later on the same day the plaintiff tendered to the defendant $30 as the rent for April, 1920, which the defendant also refused. Defendant did not on or after March 1st, 1920, at a convenient hour before sunset, make any demand on the premises for the rent due on the last day it fell due, nor at any time make any entry upon the premises for condition broken. The premises have increased in value and are worth $8,500.

On April 16th, 1920, defendant prayed out a summary process and caused the same to be served upon the plaintiff. On April 23d, 1920, plaintiff tendered to defendant $5,500 and demanded the execution of a deed of the said premises; and the plaintiff has since remained ready and willing to pay this sum, together with the $60 rent. On May 12th this summary process action was withdrawn. On April 24th, 1920, the plaintiff began the present action. Defendant began another summary process action on May 14th, counting on the lease dated May 5th, 1919, and judgment therein was rendered against the plaintiff. Defendant has remained at all times since April 23d, 1920, constant in her claim that the plaintiff had forfeited all right under the lease and agreement by not having paid the rent within fifteen days from the day when the same became due.

*Charles J. Martin* and *Frank R. Goldman*, for the appellant (defendant).

*Charles S. Hamilton*, for the appellee (plaintiff).

GAGER, J. This case turns primarily on the answers to the questions whether the plaintiff exercised his option to purchase within the time provided by the contract, and whether the plaintiff had, upon

the facts, any equitable right to the exercise of his option in case he did not do it technically within the term of the contract.

The plaintiff claims that the time within which he could exercise the option, without regard to the forfeiture provision of the lease, did not expire until the expiration of the year for which the lease was originally given. Whether the option to purchase contained in a lease is an independent agreement, or in connection with the lease forms one entire agreement, depends upon the intention of the parties, and this is to be resolved by the construction of the instrument read in the light of its circumstances. The instrument before us has a common and indivisible consideration. All of its parts are inseparably connected. Were the option to purchase clause detached from the rest of the instrument, it would be wholly nugatory as an executory contract. 2 Underhill on Landlord & Tenant, p. 979. Since this is the true construction of this instrument, it must result that when the lease falls the option to purchase goes with it. The parties to the lease cannot be presumed to have intended otherwise. No owner of premises would understandingly agree that a lessee should have the privilege of purchasing the premises during the term of a lease long after the lease had been forfeited. An agreement of that character would encumber the premises and in all likelihood prevent a sale or lease, or the making of improvements upon the owner's own premises. James on Option Contracts, § 852, states the rule to be: "Where the option gives the lessee the right to purchase at any time during the continuance or term of the lease, the right must be exercised during the life of the lease." Consequently an election made after the expiration of the term is not in time.

The plaintiff, on April 23d, 1920, attempted to ex-

Thompson *v.* Coe.

ercise his right to purchase the premises leased, by making a tender of the purchase price named in the lease and by demanding the execution of a deed of the premises. The defendant maintains that the lease was then terminated. Unless it were so terminated, the plaintiff was entitled to a conveyance of the premises.

From the statement of facts it appears that the rent due March 1st, 1919, was not then paid, nor was it paid within fifteen days thereafter as provided by the lease. This nonpayment of the March rent did not, under our law, automatically terminate the lease, but gave the lessor the option to terminate by some definite, unequivocal act showing the exercise of this option by him. *Hartford Wheel Club* v. *Travelers Ins. Co.,* 78 Conn. 355, 62 Atl. 207; *Bowman* v. *Foot,* 29 Conn. 331, 339. On April 7th, 1920, the defendant served the statutory notice to quit possession on or before April 13th, 1920. Did this notice to quit become operative on April 7th, 1920, the date of service, or on April 13th, 1920, the time limited within which the tenant must quit possession? We think the service of the notice to quit was a definite, unequivocal act of the lessor showing the exercise of her option to terminate, and that it took effect on April 7th, the date the notice was served. The specification of the time within which the tenant must quit, in no way affected the notice as a termination of the lease, but was effective only to the extent of delaying the time when the landlord could bring summary process. The fact that the plaintiff tendered to the defendant the March rent on or about April 9th, 1920, and again on April 12th 1920, is quite immaterial. The tender was not in fact made before the 15th of March. No tender after that date is provided for, either under the terms of the lease or by any statute, and these

tenders were under our law ineffectual to change the legal relation which arose between the parties by reason of the failure to pay the rent on or before March 15th. The lessor had declared her option to terminate April 7th. There had been a completed forfeiture under the terms of the contract prior to the plaintiff's attempt to exercise his option to purchase on April 23d, 1920. As a matter of strict law the plaintiff was then too late.

We do not, however, regard this as conclusive upon the plaintiff's right to purchase. The conclusion to which the trial court came and on which its judgment was based, is stated in this way: "Upon the foregoing facts, the court reached the conclusion that there had been no forfeiture of the plaintiff's right to purchase said premises upon the terms stated in the lease and agreement Exhibit A, and that the defendant was obligated to convey the same to the plaintiff upon the terms and conditions set forth in the judgment file."

If, upon the facts stated in the finding, there is any established principle of law or equity which will justify that conclusion of the court, the judgment should not be disturbed, whether the court specifically stated such principle or not. This action is in equity. From the reasons of appeal and the argument of counsel, the conclusion of the court appears to have been reached under the application of the equitable power of the court to relieve against forfeitures. The existence of such power is well settled, and at least three of the reasons of appeal are based on the assumption that the doctrine was applied in this case. In 2 Story's Equity Jurisp. (12th Ed.) § 1314, the general doctrine is thus stated: "Whatever may be the origin of the doctrine, it has been for a great length of time established, and is now expanded, so as to

embrace a variety of cases, not only where money is to be paid, but where other things are to be done, and other objects are contracted for. In short, the general principle now adopted, is, that, wherever a penalty is inserted merely to secure the performance or enjoyment of a collateral object, the latter is considered as the principal intent of the instrument, and the penalty is deemed only as accessory, and, therefore, as intended only to secure the due performance thereof or the damage really incurred by the nonperformance." And in § 1315, it is said: "The same doctrine has been applied by courts of equity to cases of leases, where a forfeiture of the estate, and an entry for the forfeiture, is stipulated for in the lease, in case of the nonpayment of the rent at the regular days of payment; for the right of entry is deemed to be intended to be a mere security for the payment of rent." In 1 Pomeroy's Equity Jurisprudence (3d Ed.) § 453, it is said: "Where a lease contains a condition that the lessor may re-enter and put an end to the lessee's estate, or even that the lease shall be void, upon the lessee's failure to pay the rent at the time specified, it is well settled that a court of equity will relieve the lessee and set aside a forfeiture incurred by his breach of the condition, whether the lessor has or has not entered and dispossessed the tenant. This rule is based upon the notion that such condition and forfeiture are intended merely as security for the payment of money." In a note it is said: "By the original doctrine of equity, the relief might be granted within any reasonable time after a breach, and even after an ejectment"; but in England and in many of the States this doctrine has been modified by statute. In 2 Swift's Digest, side page 85, it is said: "In cases of a contract by lease to pay rent, with a covenant, and clause of re-entry on nonpayment, a court of equity

will relieve the tenant on payment of the rent with interest, and all expenses; and will not let him be turned out of possession; for in such cases the loss is certain, and may be recompensed by damages." And so are the text-books generally. 24 Cyc. p. 1364. In 1 Underhill on Landlord & Tenant, it is said, § 412: "In equity general stipulations for re-entry by the landlord for the nonpayment of the rent are considered as merely intended to secure the payment of the rent and not as designed to cause a forfeiture if the tenant acts in good faith and promptly pays the rent though after it is due when it is demanded or pays it at least before the landlord shall have suffered a loss or unreasonable inconvenience from the delay or default of the tenant. It does not seem to be material in the case of a default in the performance of a covenant to pay rent that the default was intentional." In 2 Underhill on Landlord & Tenant, it is also said, in § 595: "An option to purchase will be specifically enforced in equity. The general rules and principles of equity which are considered and applied in the case of an application for equitable relief in the shape of specific performance are, as a rule, applicable to a demand for the specific performance of an option to purchase." In 2 Tiffany Landlord & Tenant, § 194 (3), p. 1412, the rule is stated: "In a court of equity, a clause of re-entry for nonpayment of rent is regarded as intended only to secure the payment of the rent, and such a court will, ordinarily at least, upon the payment of rent and of costs and expenses, relieve against the forfeiture and continue the tenant in the possession"; and in this subsection reference is made in the text and notes to the various statutory modifications of the general rule, not here pertinent. In 1 Spence, Equitable Jurisdiction of the Court of Chancery, p. 629, the jurisdiction to relieve from forfeiture for nonpayment of rent is ex-

plicitly stated in the text, and in a note the doctrine of the court of equity is thus stated: "If a man be bound in a penalty to pay money at a day and place by obligation, and intending to pay the same is robbed by the way, or hath entreated by word some further respite at the hands of the obligee, or cometh short of the place by some misfortune, and so failing of the payment, doth nevertheless provide and tender the money in short time after, in these and *many such like cases* the chancery will compel the obligee to take his principal, with some reasonable consideration of his damages. . . . The like favor . . . is extendable against them that will take advantage upon any strict condition for undoing the estate of another in lands upon a small or trifling default." In *Kann* v. *King*, 204 U. S. 43, 27 Sup. Ct. 213, 51 L. Ed. 360, 365, it was said by Mr. Justice White, referring to *Sheets* v. *Selden*, 74 U. S. (7 Wall.) 416, 19 L. Ed. 166: "That a court of equity, even in the absence of special circumstances of fraud, accident or mistake, may relieve against a forfeiture incurred by the breach of a covenant to pay rent, on the payment or tender of all arrears of rent and interest by a defaulting lessee, is elementary." Other cases were cited, among which was *Gordon* v. *Richardson*, 185 Mass. 492, 70 N. E. 1027, 69 L. R. A. 867, where the doctrine was very lucidly stated as follows: "The ground on which a tenant gets relief in equity from the forfeiture of his estate for a failure to pay rent is that in equity the landlord's right of re-entry is given as security for the payment of the rent, and on the rent being paid the very thing is done for which the security was given. Although the payment in that case is made after it is due, on interest being paid compensation is made for the delay in the performance, and on compensation being made the plaintiff is entitled to relief." Citing English and Mas-

sachusetts cases. In its most general form the rule was stated in *Mactier* v. *Osborn*, 146 Mass. 399, 402, 15 N. E. 641, 4 Amer. St. Rep. 323: "The result of the authorities, supported by sound principle, is, that where there has been a breach of a covenant to pay rent equity will relieve against a forfeiture although the breach is wilful on the part of the lessee." See also note in 69 L. R. A. 833.

We do not know of any case in our reports decided on this rule, but besides the reference in 2 Swift's Digest, side page 85, the rule seems to be recognized in *Morey* v. *Hoyt*, 62 Conn. 542, 26 Atl. 127, and *Walker* v. *Wheeler*, 2 Conn. 299. See also *Hagar* v. *Buck*, 44 Vt. 285, 291; *Gorman* v. *Low*, 2 Ed. Ch. (N. Y.) 324; *Daxter* v. *Lansing*, 7 Paige Ch. (N. Y.) 350; *Thropp* v. *Field*, 26 N. J. Eq. 82.

The jurisdiction of the court to grant relief being so well established, the next question is whether the facts present a case which entitles the plaintiff to such relief. We think the facts are strong for the plaintiff. He never intended to give up his lease; he never intended to delay a payment of rent until after the expiration of the days of grace. It had been customary, without objection, to send rent by check or money-order through the mail; the plaintiff sent the cash by the mail on March 13th in ample time, by ordinary course of the mail, to reach the defendant within the time limited in the lease. The plaintiff made the United States mail his messenger. The reason he sent cash instead of a money-order was that, going to the post-office in the evening of March 13th he found a long line of applicants in waiting, and because it was a stormy night, and the plaintiff was partially sick and anxious to get to his home some four or five miles distant, as soon as possible, he placed three bills amounting to $30—the rent due on the 15th,—in an

envelope, marked with a return-card in the corner, and directed to the defendant in the usual way, believing in good faith that this letter would be delivered. The money was lost or stolen while in transit. This, so far as the plaintiff was concerned, was an accident. He naturally presumed the delivery of the money in ordinary course of the mail. 21 R. C. L. 764; *Pitts* v. *Hartford Life & Annuity Co.*, 66 Conn. 376, 384, 34 Atl. 95; *Garland* v. *Gaines*, 73 Conn. 662, 664, 49 Atl. 19. It was not until March 25th that the plaintiff became aware of the disappearance of the money in the mails. The plaintiff, not believing the money could have been lost, assumed liability if it was lost, and requested the defendant's attorney to inquire further and if it was really not delivered he would pay again. No disclaimer or objection to this course was made. Nothing further was heard until the notice to quit was served on April 9th, together with information that the money had not been received. Immediately on this notice from defendant's attorney that the money had not turned up, the plaintiff tendered the attorney the rent on April 9th and repeated the tender April 12th.

On these facts the failure to pay on March 15th was neither wilful nor intentional, but was due solely to the theft or loss of the money in the mails. It was the equivalent of the case of robbery referred to in the citation from Spence. The conduct of the plaintiff after he was informed of the nonpayment, though as a matter of law ineffective to make the payment good, is conclusive of the good faith of the plaintiff in sending the money as he did and his continuous desire to avoid a forfeiture which he had been led into making as the result of theft from the mails. In view of the previous relation of the parties, the plaintiff was guilty of no such negligence as should deprive

him of his equitable remedy and inflict upon him a loss of $3,000. It would be an undeserved hardship, under the circumstances, to deprive the plaintiff of his option because of the theft of his rent from the United States mails. The action of the court in relieving against this forfeiture was within the well-settled practice of equity, and in it we can find no error.

It should, perhaps, be remarked here that the foregoing statement is of the general chancery practice, and the action of the court is to be defended as based upon chancery practice unaffected by local statute. In Massachusetts (Revised Laws, 1902, p. 1259, Chap. 129, § 11) provision is made for payment or tender of the rent after default and at least four days before an action to recover possession. In England (Halsbury, Laws of England, Vol. 18, p. 544) and in many of our States, statutes provide in various ways for relief from forfeiture in case of nonpayment of rent. Some of these statutory methods are collected in 2 Tiffany on Landlord & Tenant, § 194. In effect, they all provide for avoidance in some way and to some extent of forfeiture, by payment or tender of past due rent and costs in case the lessor has brought his action. In some cases a bill in equity must be filed, and the time for action by the lessee is definitely limited. These statutory provisions are a partial adoption and in some cases the definite extension, of the general equitable rule we have stated. They are all a legislative recognition of the justice of the rule as a general proposition. It is not necessary to go into any detail as we have no such statutes, but attention should be called to them as the basis of many decisions and text-book statements, quite unapplicable in this jurisdiction in so far as they differ from the general equitable doctrine.

On April 16th, 1920, the defendant began a summary process suit, returnable April 23d, based on the failure to pay rent due March 15th. This action was continued until May 12th, 1920, when it was discontinued by the defendant, and therefore plays no part in the present controversy. The present action now under discussion was brought in the Superior Court on April 24th, 1920, on the day following the refusal of the defendant to recognize the plaintiff's optional right of purchase. On May 14th, 1920, the defendant instituted a second summary process suit against the plaintiff, founded on the forfeiture to pay the rent due on or before March 15th, 1920, and on this summary process suit the defendant obtained judgment May 22d, 1920. The present plaintiff immediately filed a supplemental complaint and on May 25th, 1920, obtained an injunction from this court against the taking of the execution by the present defendant in the summary process suit. This injunction was made permanent in the final judgment in the present case. The defendant claimed that this judgment in summary process operated as a conclusive bar to the maintenance of the present action. This cannot be. The Superior Court, on April 24th and thereafter, had full legal and equitable jurisdiction to determine whether at law or in equity the plaintiff was entitled on April 23d, 1920, to exercise his option to purchase. The only jurisdiction of the justice court in summary process was to determine as to the right of possession on account of forfeiture for nonpayment of rent. It makes no difference on equitable grounds whether there had been a technical forfeiture at law or not. The jurisdiction of the Superior Court was ample, as we have seen, to determine the whole question of whether there was a legal forfeiture and whether, if so, it was sufficient to defeat the plaintiff's purchase option in equity.

The court determined that it was not, and that it would relieve the plaintiff from the effects of the forfeiture and would enjoin the defendant from making any use of the judgment in summary process to thwart the effect of this judgment in the equity action; and this it had full power to do under its established equitable jurisdiction. The decision of this court in *Gainty* v. *Russell*, 40 Conn. 450, is conclusive: "A court of chancery whose jurisdiction is not disputed, and is first invoked, cannot be ousted of it by a subsequent proceeding in a court of law, on the ground that the latter tribunal has also jurisdiction." To the same effect are *Downes* v. *Bristol*, 41 Conn. 274; *Alden* v. *Trubee*, 44 Conn. 455.

There is a minor point we do not wish to be considered as having overlooked. The rule in releasing from a forfeiture for nonpayment at the time, requires the payment of what was due with interest. The decree in this case provides for the payment of $60 rent, and says nothing of interest. The interest could not on the most technical view, have been as much as $3, and we do not think for this small sum the case should be sent back even for the correction of the judgment. That amount is too petty, and it further does not appear that the attention of the court was called to the point of interest.

Corrections of the finding, assigned as error, are either not supported by the evidence, or are inconsequential in their effect; and the grounds of appeal, although quite numerous, are, we think, sufficiently answered in the decision above reached.

There is no error.

In this opinion the other judges concurred.