**In re RITE'S CLOTHES, Inc.**

District Court S. D. New York.
Feb. 24, 1931.

Thomas & Friedman, of New York City (by Joseph D. Karp, of New York City), for claimants.

David W. Kahn, of New York City, for trustee.

GODDARD, District Judge.

Petition to review order of referee reducing claim for rent against the bankrupt estate from $22,500 to $675.

### Facts.

On January 10, 1929, David Garber, Barney Toretsky, Joseph H. Wiegel, and Israel Garber, as lessors, entered into a lease with Rite's Clothes, Inc., as lessee, for a store at #155 Asylum street, Hartford, Conn., for a period of ten years beginning March 1, 1929, at a yearly rental of $8,100 per annum for the first five years payable in advance in equal monthly installments of $675, and $8,700 per annum for the remaining five years payable in equal monthly installments of $725. The lease contained a clause reading as follows: "Second: And it is agreed that if any rent shall be in arrear and unpaid by the space of ten (10) days after the same shall be and become due and payable as aforesaid, or if default shall be made in any of the covenants herein contained, and by the lessee agreed to be kept and fulfilled, and said default shall continue after written notice to the lessee of the same for a period of ten (10) days thereafter, then this lease shall thereupon, by virtue of this express stipulation, expire and terminate and the lessors at any time thereafter and without any previous demand or notice whatever, shall have the right to re-enter and take possession of said leased premises and the same have and possess as of their estate." The lease did not contain provisions frequently included in leases to the effect that in the event the landlord terminates the lease for default on the part of the lessee, the landlord reserves a right of action for damages or

that the landlord might re-enter and relet the premises for the account of the tenant.

The rent was duly paid up to and including June, 1930, in which month the tenant moved out of the premises and the rent was not paid for July. On July 12, 1930, the following communication was sent by registered mail from the lessors to the lessee:

"July 12, 1930

"Rite's Clothes Corp.
"275 Seventh Ave.
"New York City.            Registered
"Gentlemen:

"You are hereby notified that your rent for the month of July, in accordance with your lease, has not been received by us. We therefore, request that you kindly send same to us by return mail.

"Respectfully yours
"David Garber et al.
"JHW:MC       Per J. H. Wiegel"

Although the testimony before the referee offered by the lessors is confusing and conflicting, he has found that there was a re-entry upon the premises by the lessors, and that this re-entry occurred before the end of July, and after an examination of the testimony, I believe this finding to be correct.

A voluntary petition in bankruptcy was filed by Rite's Clothes, Inc., on August 12, 1930.

In the early part of September, the lessors entered into a lease with a new tenant, Markson Bros., beginning September 15, 1930, the rent stipulated in this lease amounting to $21,200 less than the amount of rent payable for the corresponding period under the lease to Rite's Clothes, Inc., and the claim of $22,500 filed includes this $21,200 and $1,350, the rent for July and August, 1930, at the rate of $675 a month.

If this lease expired or was surrendered or was terminated, it is clear that thereafter no liability for future rent could be based upon that lease, for it had come to an end. And it seems to me that the lease was terminated in accordance with clause "second." The penalty or consequences of the failure of the tenant to pay the rent or to observe any of the covenants of the lease were expressly provided for in the "Second" clause (part of which was written in apparently by a representative of the lessor), and says: "if any rent shall be in arrear and unpaid by the space of ten (10) days after the same shall be and become due and payable as aforesaid or if default shall be made in any of the covenants herein contained, and by the lessee agreed to be kept and fulfilled, and said default shall continue after written notice to the lessee of the same for a period of ten (10) days thereafter, then this lease shall by virtue of this express stipulation, expire and terminate. * * *" This clause is explicit and clearly means that if the rent is not paid for ten days the landlord may give the tenant written notice of the default and in the event the default continues for ten days, the lease is then terminated. There was a default in the payment of rent for and on the 12th day the lessors gave written notice of the default, the default continued for ten days more, and so the lease terminated. Whether this was a desirable provision from the standpoint of the landlord, or whether it was wise to give the written notice and to terminate the lease, is perhaps open to question, but the lessors may have had their own good reason for so doing; perhaps, the fact that the lessee had contributed $2,000 or more toward building a new front for the premises entered into the situation as well as the general business conditions then prevailing.

While counsel urge that the notice of July 12th was merely a request for rent and nothing more, however, the testimony of Wiegel before the referee was that they went to their lawyer when the rent was not paid and he told them what to do and that he told us "we couldn't go into that place until after that ten days went by."

Counsel for claimants refer to several Connecticut decisions, among them, the case of Bowman v. Foot, 29 Conn. 331, where a lease contained the following clause: "Provided however, that if the lessee shall neglect to pay the rent as aforesaid, then this lease shall thereupon, by virtue of this express stipulation, expire and terminate; and the lessor may, at any time thereafter, re-enter said premises, and the same possess as of his former estate." And the court said: "It is well understood that such expressions as these in leases for years do not designate the non-payment of rent as an event, like a death or a marriage, at the date of which an estate shall cease at all events. If so, it would be in the power of the tenant, whenever his leasehold property became unprofitable or onerous, to relieve himself, at any pay-day, of his duty to retain it, by simply violating his own covenants. Such a construction would be a plain perversion of the intent of the parties. Accordingly, such stipulations are now universally taken to be for the advantage of the landlord * * * where a lease is thus voidable, the landlord's option to avoid it

should be exercised * * * and * * * should be brought home to the tenant's knowledge through some unequivocal act. * * * "

In the case at bar there was the "unequivocal act." First, the sending of the written notice as provided for in the lease itself, and afterwards, some time in July, the re-entry by the landlord. Counsel for the landlord urge that the case at bar comes within the rule laid down by the Circuit Court of Appeals of this circuit in Re Mullings Clothing Co., 238 F. 58, basing their contention on the ground that there had been an abandonment of the premises by the tenant prior to bankruptcy. But even if there had been an abandonment, a conclusion which in my judgment is not supported by the record, the landlord chose to terminate the lease and did terminate it without any reservations. So that at the time of the bankruptcy, there was no lease in existence, nor was any claim reserved by the landlord. In the lease it had been expressly provided that in the event of a default by the tenant, the landlord had the right to terminate the lease and re-enter and the landlord exercised that right. That ended it.

Therefore, I think the claimants have no claim beyond that for rent and for rent only up to the time of the termination of the lease and re-entry by the landlord, which was before the first of August. The order of the referee is therefore confirmed.