[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a summary process action which comes before the court on a motion to dismiss. The facts are undisputed. The parties entered into an oral month-to-month lease with rent due on the first of each month. In the month of September, 1990 the defendant failed to pay rent by the 10th of the month. On September 11th the plaintiff served the defendant with a notice to quit by September 20th which was in all respects save one procedural deficiency in proper order. He followed this with a summons and complaint. That action was dismissed by the court on the sole ground that the complaint was not signed by the plaintiff. The court did not in any manner determine the sufficiency of the notice to quit in the first action.[1] However, for purposes of the instant motion, the court assumes the first notice to quit to be procedurally defective.[2] Subsequent to the service of the first notice to quit, plaintiff served a second notice on October 11, 1990 to quit the premises on or before October 26, 1990. This notice was properly served upon the CT Page 1211 defendant and was followed in due course by a properly executed summons and complaint which resulted in the instant action.
The defendant moves to dismiss the instant action on the ground that the court lacks subject matter jurisdiction in that service of a notice to quit for nonpayment of rent is improper where the tenant had no obligation to pay rent; therefore the second notice to quit was defective. The defendant reasons that the notice to quit served on September 11th (hereinafter referred to as the first notice to quit) had actually effected a termination of the lease thereby converting it into a tenancy at sufferance and this obligating the tenant to pay use and occupancy not rent citing in support thereof Bushnell Development Corp. v. Fazzano, 38 Conn. Sup. 683 (1983). The plaintiff opposes this motion arguing that the first notice to quit was a nullity because it was improperly served and therefore had no legal effect upon the tenancy citing in support thereof (in oral argument) the case of Bridgeport v. Barbour-Daniel Electronics, Inc., 16 Conn. App. 574 (1988).
This case and cases similar to it in which the legal significance of multiple notices to quit have come into question and which have of late caused some considerable uncertainty to litigants in the housing courts raises a timely issue of whether a notice to quit which on its face unequivocally exercises the landlord's option to terminate a lease may serve to terminate that lease where due to procedural or statutory defects that same notice could not support a summary process proceeding.
If the answer to this question is in the affirmative, then the defendant's motion to dismiss must, under the circumstances of this case, be granted. If the answer is in the negative, then the plaintiff's objection is well taken.
This court concludes that the first notice to quit had the effect of terminating the month-to-month tenancy thus converting it into a tenancy at sufferance. Lonergan v. Connecticut Food Store, Inc., 168 Conn. 122. 131 (1975); Housing Authority v. Hird, 13 Conn. App. 150, 155 (1987): Rivera v. Santiago. 4 Conn. App. 608,610 (1985). As such the defendant was not obliged to pay "rent" but only the fair rental value of the premises, i.e., use and occupancy. Welk v. Bidwell, 136 Conn. 603, 609 (1950). Predicating a summary process action on the basis of nonpayment of rent when in fact it technically involved the nonpayment of use and occupancy could not furnish a basis for a judgment under the summary judgment statutes. Rosa v. Christina, 135 Conn. 364,367 (1949). Furthermore, such an action must fail for lack of subject matter jurisdiction inasmuch as the summary process statutes recognize no cause of action for the nonpayment of "use and occupancy". See, Sec. 47a-23, 47a-15a Connecticut CT Page 1212 General Statutes; See also, Bridgeport v. Barbour-Daniel Electronics, Inc., supra. 581 n. 7.
This notwithstanding, plaintiff strenuously urges that court's holding in Barbour-Daniel Electronics, supra. controls the result in this case and therefore the first notice to quit herein could not possibly effect a lease termination. However, after an extensive review and comparison of the common and statutory law on the subject this court is convinced that plaintiff's reliance on the Barbour-Daniel Electronics decision is misplaced.
 I
Under common law a landlord had a variety of remedies to retain possession of his premises because of the termination of the lease due to lapse of time, forfeiture or other reasons without becoming liable for damages: (1) peaceable re-entry, as where the tenant has surrendered the premises; (2) by means of use of reasonably necessary force except where such right was taken away by entry, and detainer statutes as it has been in this state;[3] (3) and by the usual means of the common law action of ejectment. 50 AM JUR 2d, Landlord and Tenant, Sec. 1219. To these has been added statutory remedy commonly referred to as summary process actions. In Connecticut, the first statutory cause of action emerged circa 1806 and is found in Conn. Rev. State c. 23 p. 450. 33 CBJ 62, An Action of Summary Process, A. Goldberg, (1959). The primary purpose of the statutory cause of action was to afford a landlord a relatively swift and simple means of recovering possession upon the termination of a lease inasmuch as the common law action of ejectment proved to be cumbersome and time consuming. To that end, certain procedures were relaxed and limitations placed upon the scope of the remedy such as limiting it to regaining possession and the use of a formalized notice to quit.[4] Although its scope and breadth has expanded, its original purpose to provide a swift and relatively simple means of relief has remained constant. Prevedini v. Mobil Oil Corporation,164 Conn. 287, 292 (1973).
Under common law in Connecticut, a lease did not terminate automatically upon the happening of an event such as he nonpayment of rent. The happening of that event merely gave the landlord a right to terminate the lease at his option. Our Supreme Court long ago characterized this situation as follows:
 "By the breach [non-payment] the lessee forfeits his right to the continuance of the lease, and the lessor gains the right to terminate the lease in the manner CT Page 1213 prescribed by law. . ." Hartford Wheel Club v. Travelers Ins. Co., 78 Conn. 355, 358 (1905) [emphasis added]
To properly exercise that option or right, the land lord was required to take some affirmative and unequivocal action ". . . that would signify to the lessee in a decisive manner his election to terminate the lease." Read v. Tuttle, 35 Conn. 25,26 (1868). [emphasis added] Originally, one was required to actually enter upon the premises to effectuate this right. Chalker v. Chalker, 1 Conn. 79, 92-93 (1814). Later, however, it became unnecessary for the landlord to literally re-enter upon the premises to effect the termination, Bowman v. Foot,29 Conn. 331, 339 (1860). It was nevertheless essential that the landlord bring ". . . home to the tenant's knowledge through some unequivocal act, in order to certify to him while he is absolved from the further performance of a lessee's duties.". Id., 340. Finally, the service of a notice to quit was held to be a sufficient alternative means to a literal re-entry if it demonstrated a definite unequivocal exercise of the option to declare a forfeiture. Thompson v. Coe. 96 Conn. 644, 651 (1921).
Thus under common law in order to successfully terminate a lease when a forfeiture occurred, the landlord was required to act affirmatively, decisively and unequivocally, to bring home to the tenant that he was exercising his right to terminate the lease in question.
Although the form of the remedy may have been changed by the statutory cause of action, the common law requirements essential to terminate a lease were not changed or abrogated by statute. Our Supreme Court clearly affirmed this doctrine when in referring to the summary process statute then in existence it said:
 "It supersedes none of the common-law remedies of the landlord, except in respect of the notice to quit and the form of procedure by action." Bowman, supra. 337.
And, if there be any doubt that the court made a conscious effort to declare that these common law principles remained inviolate in the face of statutory proceedings, one need only read the dissenting opinion which took the position that statutes had abrogated the common law with regard to the landlord's remedy to regain possession of his property. Bowman, supra 342. Finally, as if to further emphasize this point the court said by way of dicta: CT Page 1214
 "To prevent future litigation and to enable parties to make contracts adapted to the view which we take of the law, we go a step beyond the requirements of the case to speak of the formalities necessary to terminate a lease voidable on the non-payment of rent. We confess that we know of no new rules with which to instruct our judgment in this matter, and naturally adhere to the stated doctrines of common law." Id. 341 (emphasis added)
The doctrines referred to, of course, being an affirmative decisive and unequivocal declaration of termination. Bowman v. Foot, supra., Read v. Tuttle, supra. This court is neither aware of nor has found any evidence either in the statutory or decisional law of this state changing these requirements. Therefore, the conclusion is inescapable that a lease may be properly terminated irrespective of compliance with the statutory requirements of our summary process laws so long as the essentials of the common law standard are complied with.
Although this writer has not found any recent cases that articulate the doctrine as herein stated, some recent cases seem to subscribe thereto by implication. See, Bridgeport v. Barbour-Daniel Electronics, Inc., supra 583, 584 n. 10 and 589, (Borden, J. dissenting); Sandrew v. Pequot Drug, Inc.,4 Conn. App. 627 (1985).
This court's holding herein does not suggest that a notice to quit that fulfills all the requirements of a common law declaration of termination, but fails to comply with statutory requirements will support a summary process action. It will not. It is well settled that a valid statutory notice to quit is a condition precedent to the bringing of a summary process action. O'Keefe v. Atlantic Refining Co., 132 Conn. 613, 622
(1946); Webb v. Ambler, 125 Conn. 543, 552 (1939); Bridgeport v. Barbour-Daniel Electronics, Inc., supra 574. A fortiori, a statutorily defective notice to quit will not confer jurisdiction upon the court in a summary process action. But the mere fact that a notice is valueless as a statutory key to the summary remedy, does no necessarily affect the other common law consequences that flow from an otherwise qualified declaration of forfeiture, Sandrew, supra. 631, including its ability to terminate the contractual relationships between the parties. Consequently if the document represents a valid exercise of the option to terminate, it will have the usual legal consequence of a declaration of forfeiture. In the case at bar these CT Page 1215 consequences resulted in the termination of a periodic tenancy and conversion to a tenancy at sufferance. Lonergan v. Connecticut Food Store, Inc., supra. 131; Housing Authority v. Hird, supra. 155; Rivera v. Santiago, supra. 610.
 II
As previously stated plaintiff's reliance on the Barbour-Daniel case was believed to be misplaced. An examination and comparison of the facts in each case is therefore in order,
In Barbour-Daniel at all times relevant the defendant was occupying the premises as a holdover month-to-month tenant. The defendant failed to pay the April rent and the plaintiff served a notice to quit on May 1st for nonpayment of the April rent. Realizing the first notice to quit had been untimely served,[5]
it served a second notice to quit for nonpayment of the June rent followed in due course by the institution of a summary process action based ultimately on nonpayment of rent. Similar to the defendant in the instant case, Barbour-Daniel moved to dismiss on the ground that the first notice to quit had terminated the lease and consequently the defendant was not obligated to pay rent. Judgment was rendered for the defendant in the trial court. On appeal the appellate court recognizing the legal dilemma posed by successive notices to quit, resolved the matter by concluding that the first notice to quit was invalid not only to support a summary process action but for all purposes. Consequently, the first notice could have no legal consequences — particularly those urged by the defendant. Judgment was reversed and remanded with instructions to reinstate the plaintiff's action.
The appellate court clearly articulated why the first notice could not support a summary process action:
 "The May 1, 1986 [1st notice] was invalid because it was not served in the same month in which it was issued." Id. 574.
But without any detailed articulation of the factual basis therefor, the court went on to hold:
 "We conclude that the 1st notice to quit was invalid for all purposes, including the termination of the month to month tenancy." Id. 684
This holding was cited with approval by our Supreme Court in Bargain Mart, Inc. v. Lipkis, 212 Conn. 120 remarking that: CT Page 1216
 ". . . a notice to quit will not terminate a lease if the notice itself is invalid. Indeed, it is self-evident that if the notice is invalid, the legal consequence of termination arising from the service of a valid notice does not result." Id. 134.
It is important to understand why the Barbour-Daniel court held the first notice to quit to be invalid for all purposes for two reasons: first, because our highest court has approved this holding; and second, because the rationale will distinguish it from the case at bar.
The rationale as set forth in both Barbour-Daniel Electronics and Bargain Mart are consistent with the common law doctrine relating to requirements essential to termination of a lease. As previously stated, all of the essentials required under law must be present in order that the exercise of the right to terminate be effective. Bowman v. Foot, supra, 340; Hartford Wheel Club v. Travelers Ins. Co., supra. 358. However, a closer analysis of the facts in Barbour-Daniel reveals that the notice to quit in question failed to qualify under at least one of the common law standards — decisiveness. In Barbour-Daniel, plaintiff's right to terminate accrued on the 10th of the month when the rent remained unpaid. Sec.47a-15a Connecticut General Statutes. Because of the brevity of the term the plaintiff had to act before the end of the month in order to terminate that lease. Although it acted on the last day of the term by issuing the notice to quit, it was not served upon the defendant until the beginning of the new term. A notice to quit is effective as of the date of service. Thompson v. Coe, 96 Conn. 644, 651 (1921). Therefore, by waiting until virtually the 11th hour to take advantage of its right to terminate the lease, the plaintiff was guilty of indecision.
In addition, the plaintiff failed to meet another common law requirement of bringing home to the defendant's knowledge the fact that the lease had terminated. Bowman v. Foot, supra. 340. By exercising a right patiently referable to an expired term but intending to apply it to the new term, the message in the notice clearly introduced an element of confusion into the process which cannot serve the requirements necessary to effect a forfeiture under common law. A forfeiture must be clearly declared. 49 AM JUR 2d, Landlord and Tenant, Sec. 1048. See generally, Camp v. Scott, 47 Conn. 366, 372-73 (1879).
The aforementioned unarticulated factors must have been what induced the Barbour-Daniel court to conclude as it did.[6]
In any event, its conclusion is entirely consistent with common CT Page 1217 law standards for the reasons already indicated.
On the other hand, the factual situation in the case at bar necessarily leads to a different legal conclusion. The plaintiff's first notice was issued and served in a timely fashion. The content of the notice was a clear and unequivocal exercise of the plaintiff's right to terminate the monthly lease[7]
in the month in which it was served. The plaintiff certainly acted decisively by exercising his right immediately after the passage of the statutory grace period. Finally, there was no ambiguity as to which term the notice was to apply. Contrary to the first notice in the Barbour-Daniel case, this notice contained all of the essential common law elements necessary to terminate the lease. Despite the fact that this notice may not have passed muster for purposes of instituting a statutory eviction proceeding, it nevertheless did terminate the lease ". . . in the manner prescribed by . . ." common law. Hartford Wheel Club v. Travelers Ins. Co., supra. 358; Thompson v. Coe, supra. 651. Under the circumstances the defendant lessee had a right to "insist upon the legal consequences of the lessor's act, Hartford Wheel Club v. Travelers Ins. Co., supra. 358-359 which relieved him of the obligation to pay rent. Lonergan v. Connecticut Food Store, Inc., supra; Housing Authority v. Hird, supra; Rivera v. Santiago. This is because once the forfeiture is perfected by re-entry or an equivalent act, it cannot be withdrawn, waived or retracted without the consent of the tenant. Hartford Wheel Club v. Travelers Ins. Co., supra. 355; Camp v. Scott, 47 Conn. 366, 370 (1879). The defendant in the case at bar never gave his consent, but consistently insisted on the application of the resulting legal consequences.[8]
The practical effect of issuing valid successive notices to quit in situations where the leases are of short duration is to limit the options available to a landlord to dispossess a defaulting tenant by restricting him to the use of the lengthy and cumbersome common law remedy of ejectment or instituting a completely new summary process action predicated upon an appropriate ground consistent with the legal consequences of the original notice to quit.
In view of the result in this case, it is safe to say that the lesson taught here is that a landlord who is indecisive in taking advantage of his right to forfeit a short term lease for condition broken, may suffer even greater and costlier delays by instituting a subsequent action predicated on a second notice to quit based on the same forfeiture. To avoid this pitfall, a landlord would be well advised to carefully consider the possible adverse consequences before issuing successive notices to quit based on the same forfeiture.[9]
CT Page 1218
For the foregoing reasons, the defendant's motion to dismiss should be and is hereby GRANTED.
BY THE COURT, MELVILLE, J. CT Page 1219
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]