THERESA TSEKA ET AL. *v.* IDA SCHER

MALTBIE, C. J., BROWN, JENNINGS, ELLS and O'SULLIVAN, JS.

Argued January 6—decided March 15, 1949.

*Ralph G. Woolfson,* for the appellant (defendant).

*Aaron Nassau,* with whom, on the brief, was *Solomon Elsner,* for the appellees (plaintiffs).

JENNINGS, J.   The named plaintiff is hereinafter referred to as the plaintiff because the relationship of the

coplaintiff does not affect either the discussion or the result. The plaintiff took the steps necessary to exercise an option to purchase the property occupied by her under a lease, but the defendant refused to convey on the ground that the lease, and with it the option, had been terminated. Judgment was for the plaintiff for specific performance and the defendant appealed.

The assignments of error are numerous but few are pursued in the defendant's brief. The first is to the effect that the court erred in refusing to strike out an amended reply when a demurrer had previously been sustained to a pleading containing similar allegations. The trial judge was not bound by a previous ruling on demurrer by another judge. *Albrecht* v. *Rubinstein,* 135 Conn. 243, 247, 63 A. 2d 158. The brief then says that in support of five specified "assignments of error the appellant cites the entire record and all of the pleadings and exhibits." A statement of this kind is tantamount to an abandonment of the designated assignments of error, and they are not considered. *Soderstrom* v. *Country Homes of Norwalk, Inc.,* 132 Conn. 381, 388, 44 A. 2d 698; *Marra* v. *Kaufman,* 134 Conn. 522, 529, 58 A. 2d 736. Furthermore, the basic facts decisive of the case are substantially undisputed. A claim with reference to the filing of a brief by the plaintiff after the case was closed, fully set forth in the finding, is without merit. The only assignment of error of which the defendant can avail herself is the action of the trial court in overruling her claims of law. She rests her case before us on a claim that her letter of March 9, recited below, terminated the lease.

The plaintiff bought a business conducted as a store from one to whom it had been sold by the defendant and took a lease of the premises from the latter with an option to purchase during the term. The store was run by the plaintiff's husband. The lease was dated March

4, 1942, was for five years, had many provisions, and contained the following clauses: "And it is Agreed, That . . . if default shall be made in any of the covenants herein contained and to be kept and fulfilled on the part of the said parties of the second part, then it shall be lawful for the said party of the first part at any time after such neglect or default, and without any previous demand or notice whatever, to re-enter and take possession of said leased premises, and such reentry and taking possession shall end and terminate this lease. . . . It is hereby agreed . . . that the parties of the second part will pay all water bills charged against the premises leased herein."

There was some irregularity in the payment of the rent and other bills. On October 22, 1945, the defendant notified the plaintiff's husband that in the future all payments must be made promptly and in accordance with the terms of the lease or it would be canceled by her. All rental payments thereafter to the end of the term were made on time and were accepted by the defendant. Bills for water were rendered to the defendant semiannually in February and August. After the death of her husband on June 3, 1944, she went to live with her daughter in North Carolina and the bills were mailed to her there. She would forward them to her attorney, Mr. Woolfson, and he would take them to the store. On March 5, 1946, he requested the water bureau to send the bills to his wife, Rose Woolfson, niece of the defendant. About March 8, 1946, Mrs. Woolfson left the February 1 water bill with the plaintiff's husband and he, on that date, sent a check for $14.40 to the water bureau. This was returned because it failed to include interest, and on March 15 he paid the bill in full. The defendant did not suffer any loss by reason of the payment of this or other water bills after the due date.

On March 9, 1946, the defendant, in a letter sent by registered mail to the plaintiff's husband, said: "Inasmuch as my lease agreement with you stipulates that you must pay your water bills which you use on my property within ten days after due, and due to the fact that I have been notified that a bill for water used by you in January, and due February 1st in the amount of $14.40, which should have been paid by February 10th and remains unpaid, I am sorry to inform you that you have breached your contract with me and you no longer have a lease with me. I had already put you on notice to the effect that in the event you breached any part of our lease agreement, that I would be compelled to terminate same, and I am so notifying you. Commencing April 1st, please be advised that I am renting my premises to you on a month to month basis, and should I feel that additional monthly rental is necessary, I will give you thirty days notice of such intent. I trust that you will take care of your water bills, etc., promptly as long as I continue to permit you to rent my store property."

On the same day this letter was received, March 14, 1946, the plaintiff's attorney wrote to the defendant stating that the water bill had been paid, indicating that the purported repudiation of the lease would not be recognized and giving notice of intention to exercise the option to purchase. On April 3, the plaintiff wrote the defendant that she was exercising her option to purchase the property and inclosed a certified check for $1000 which the lease required to be paid in cash at that time, but the check was returned and further offers of performance were refused.

The defendant's claim, then, comes down to this: A formal written lease which provided for re-entry for breach of covenant was terminated by the dispatch of a letter to a stranger to the lease stating that it was

canceled for breach of a covenant, although on the undisputed facts the breach alleged did not exist. There was no attempt to re-enter. To state the claim is to refute it. Re-entry as a means of asserting a claim to right of possession is one of the oldest principles of the law of real property and it still has the highly desirable quality of being an unequivocal act. See *Chalker* v. *Chalker,* 1 Conn. 79, 86. No case has been cited or found which supports the defendant's position. On the contrary, the lessor can terminate the lease under these circumstances only by a re-entry or other unequivocal act, such as a notice to quit under the statute. *Bowman* v. *Foot,* 29 Conn. 331, 339; *Thompson* v. *Coe,* 96 Conn. 644, 651, 115 A. 219; *Kovner* v. *Dubin,* 104 Conn. 112, 118, 132 A. 473; *Cheney* v. *Bonnell,* 58 Ill. 268, 271; *Alexander* v. *Hodges,* 41 Mich. 691, 694, 3 N. W. 187; *Jones* v. *Carter,* 15 M. & W. 718, 724, 153 Eng. Rep. 1040; see *Hartford Wheel Club* v. *Travelers Ins. Co.,* 78 Conn. 355, 358, 62 A. 207; *Shannon* v. *Jacobson,* 262 Mass. 463, 468, 160 N. E. 245. In *Moore* v. *Ullcoats Mining Co., Ltd.,* [1908] 1 Ch. 575, the court said (p. 588) that it did not see "how it is possible, on any construction of this proviso for re-entry, to say that the lessors have re-entered, when all that they have done is to give a notice of their intention to re-enter, founded on a statement that the lease had determined, which had not in fact happened, or a demand for possession founded on that notice."

The letter of March 9, on which the defendant relies, was not such an unequivocal act as is required by this rule. It was based on a breach of contract which did not exist. It did not demand possession but was, on the contrary, an invitation for the lessee to remain in possession as a month-to-month tenant. It was not even addressed to the plaintiff lessee. She never received formal notice of the lessor's intention.

The parties have argued various other legal propositions, but the sustaining of the plaintiff's claim that the lease was not terminated decides the case.

There is no error.

In this opinion the other judges concurred.