367 P.2d 700

**EAGLE TAIL, INC., a Corporation,
Plaintiff-Appellant,**

v.

**Mrs. Lina H. ORRIS, Defendant-Appellee.**

No. 6896.

Supreme Court of New Mexico.

Jan. 5, 1962.

Wright & Kastler, Raton, for appellant.

Robertson & Skinner, Raton, for appellee.

MOISE, Justice.

On May 20, 1946, a lease agreement was entered into between Eagle Tail, Inc., plaintiff-appellant herein, and Mrs. Lina H. Orris, defendant-appellee, whereby a tract of land containing approximately 395.42 acres was leased by appellee to appellant for a term of years ending May 19, 1961, with a provision for renewal for an additional 15 years. This is a suit seeking specific performance of an option contained therein.

Article X of the lease, insofar as the same is material to a decision here read as follows:

"The lessor hereby gives and grants to the lessee the right and privilege, at its option and election, of purchasing the leased premises for a total purchase price to be determined on the basis of $75.00 per acre for the entire tract of land. Said option shall be exercised by the lessee, if at all, by mailing written notice to the lessor by registered mail at any time on or before the termination of this lease, or any renewal hereof. In

the event that the lessee shall exercise said option as above provided, then immediately upon the mailing of such notice it shall be deemed and considered that the parties hereto have thereby agreed upon the sale and purchase of said premises, under the following terms and conditions: * * *."

On September 20, 1949, a letter was sent by appellant to appellee containing the following language:

"In connection with Paragraph X of our leasehold agreement dated May 20, 1946, we understand that you desire some assurance from us that in case we should exercise the option to purchase, we would give you at least sixty days advance notice of our intention to exercise the option so that you might have the advantage of this information in handling your other business affairs.

"Accordingly we hereby agree that if we exercise the purchase option at any time prior to the calendar year 1976, we will advise you in writing of our intention to exercise the option at least sixty days prior to the actual exercise of the option."

As early as September 5, 1956, appellant advised appellee that although it was not exercising its option at the time, it intended to do so in the future. Thereafter, starting about March 28, 1958, and continuing to July 21, 1958, a series of letters passed from appellant to appellee, the general tenor of which is demonstrated by four which we quote. On March 28, 1958, the following notice was sent:

"Notice of Election to Exercise Option Under Provisions of Leasehold Agreement, dated May 20, 1946.

"To: Mrs. Lina H. Orris
"1294 College Avenue
"Topeka, Kansas

"The undersigned, Eagle Tail, Inc., a corporation, as lessee, in accordance with and as provided by the terms and provisions of that certain written Leasehold Agreement, particularly Paragraph X thereof, dated May 20th, 1946, between Mrs. Lina H. Orris, as Lessor and Eagle Tail, Inc., a corporation, as Lessee (the same being filed for record June 7, 1946 and duly recorded in Volume 42 at page 488 of the Miscellaneous Records of Colfax County, New Mexico) the same being made a part hereof in its entirety by this reference as though set forth at length herein, does hereby give written notice that it elects to exercise the right and privilege of purchasing the said leased premises described in said leasehold agreement for the total purchase price of $75.00 per acre for the entire tract of land.

"This notice is given while said lease is in full force and effect.

"That a copy of said leasehold agreement is annexed hereto and made a part hereof.

"This notice is sent via registered mail in accordance with the terms and provisions of said leasehold agreement.

"You will govern yourself accordingly and in accordance with the terms and provisions of said leasehold agreement.

Dated and signed this 29th day of March, 1958."

On April 25, 1958, appellant wrote as follows:

"Your letter of April 18, 1958 with check enclosure has been received. By letter dated September 5, 1956, you were advised by us as follows:

" 'We feel that to protect our investment at Eagle Tail Airport will require our eventual purchase of the land.

" 'While this letter is not an exercise of our option, we would like to know whether you would be interested in selling us the entire tract of land under any terms other than those expressed in the leasehold agreement.'

"Thereafter, some time between the 20th day of September and the 8th day of October, 1956 in a meeting with us in your motel room in Colorado Springs, Colorado, you were orally advised that we intended to exercise the option contained in paragrant X of the Lease-

hold Agreement dated May 20, 1946 unless different terms of sale were agreed upon. In response to this oral notice, you advised us in substance that if we exercised this option you would be a bearcat.

"Following this meeting, we have been in more or less constant negotiation with you on the acquisition of this property and no agreement has been reached.

"Then on March 28, 1958, we mailed you a written notice of election to exercise option, which you have received.

"On April 14, 1958, we mailed you our letter containing Cashier's Check in the amount of $7,414.13 which you received and which you returned to us with your letter of April 18, 1958. We do not know what position you may eventually take as to the validity of our letter of September 20, 1949, which you mention in your letter to us dated April 18, 1958. Regardless of whether our letter of September 20, 1949 is a valid modification of the Leasehold Agreement between us dated May 20, 1946, we wish to protect our rights under any eventuality.

"Accordingly, we are returning herewith Cashier's Check No. 47140 of the First National Bank in Raton dated April 14, 1958 in the sum of $7,414.13, representing the initial payment of

twenty-five per cent of the total purchase price of the property calculated on a total of 395.42 acres, all in accordance with paragraph X of the Leasehold Agreement dated May 20, 1946 as the same may or may not be amended by our letter of September 20, 1949 and in accordance with the Notice of Election to Exercise Option heretofore mailed to and received by you.

"The date of the exercise of said option shall be fixed and determined in the light of and in view of all matters hereinbefore set forth, our previous correspondence and conversations, the provisions of the Leasehold Agreement dated May 20, 1946 and any valid amendment thereof, our Notice of Election to Exercise Option, and our letter of April 14, 1958 to the end that our actions shall constitute a timely and effective election to exercise said option regardless of whatever position you may take in attempting to prevent us from effectively and timely exercising said option. All tenders made by us and notices given to you in every form shall be construed and considered by you as continuing tenders and notices."

On May 29, 1958, appellant again wrote, and after recounting some of the previous correspondence, stated:

"Accordingly, we hereby exercise the right and privilege of purchasing the leased premises all as provided by paragraph X of the Leasehold Agreement dated May 20, 1946, (which agreement is made a part of this letter by reference as though set forth at length herein) and further as in paragraph X(A) of said Agreement provided, enclose herewith Cashier's Check No. 47140 of First National Bank in Raton in the amount of $7,414.13.

"Will you kindly furnish us with an abstract of title as provided by Section X(B) of said Agreement?"

Finally, on July 5, 1958, appellant wrote as follows:

"You have been given written notice by Eagle Tail, Inc., of our intention to exercise the option to purchase as contained in the Leasehold Agreement dated May 20, 1946, as amended by letter to you on September 20, 1949. You have had more than sixty days notice of this intention to purchase.

"Accordingly, we hereby exercise the right and privilege of purchasing the leased premises provided by paragraph X of the Leasehold Agreement dated May 20, 1946, (which agreement is made a part of this letter by reference as though set forth at length herein) and further as in paragraph X(A) of the said Agreement, we enclose herewith Cashier's Check No. 47140 of the First National Bank in Raton in the amount of $7,414.13.

"Please furnish us with an abstract of title pursuant to Section X(B) of said Agreement."

Appellee replied to some of the letters written to her. In each instance she found fault with the notice given, stated that no notice of intention to exercise the option had been given, and refused to recognize any right to purchase as having been exercised by appellant. After being finally advised to this effect by a letter dated July 21, 1958 which was written in response to the July 5, 1958, letter quoted above, appellant, on August 19, 1958, brought suit seeking specific performance of the option agreement.

Appellee answered asserting that appellant had at no time advised appellee in writing of its intention to exercise the option, in advance of its attempted exercise of it. In her answer brief filed herein appellee states that the notice to be effective was required to "indicate a specific future time at which the option will be formally exercised," and that since appellant failed to give advance notice of a specific future time there has been no effective exercise of the option.

It thus becomes apparent that the entire controversy turns on whether appellant's agreement, as stated in the September 20, 1949, letter, to advise "in writing of our intention to exercise the option at least sixty days prior to the actual exercise of the option" was complied with by the letters hereinbefore quoted. (The September 5, 1956, letter is also asserted as notice. However, we do not consider we need discuss whether it was or not).

Appellee's position is simply that because notice was given of "exercise" of the option to purchase rather than of "intention" to do so, and because no date 60 days in the future for actually exercising the option was ever specified by appellant, there was a fatal variance from the terms of the lease agreement as modified by the letter of September 20, 1949.

In support of her position that an optionee wishing to exercise its option must act unconditionally and precisely according to the terms of the option, appellee cites Polhamus v. Roberts, 50 N.M. 236, 175 P.2d 196, 170 A.L.R. 991. So far as this case is concerned it should be sufficient to point out that no option was there involved. The entire case turned on whether there had been any proper acceptance of a telegraphic offer to sell, the offeree having replied thereto by mail. The case is no authority for appellee's position.

Cases from other jurisdictions involving requirements of notice of intention to exercise an option a certain number of days in advance of its exercise, where the requisite number of days does not elapse before expiration of the option, are also cited. In such cases quite generally it is held that there is no right to require specific perform-

ance. Typical of such cases are Rosenaur v. Pacelli, 174 Cal.App.2d 673, 345 P.2d 102; Noble v. Higgins, 214 App.Div. 135, 211 N.Y.S. 833; Gray v. Lipscomb, 48 Wash.2d 624, 296 P.2d 308; Barham v. Davenport, 247 N.C. 575, 101 S.E.2d 367. However, they are not authority for appellee's position in a case such as this where the time for exercising the option had not expired, and the only question is whether the notice of intention as required by the contract had been given.

On March 28, 1958, while the right to exercise the option was in full force, appellant sent appellee a notice entitled "Notice of Election to Exercise Option under Provisions of Leasehold Agreement, dated May 20, 1946" which stated that under the provisions of the agreement appellant was thereby giving "written notice that it elects to exercise the right and privilege of purchasing the said leased premises, etc." and directed that appellee should govern herself "accordingly and in accordance with the terms and provisions of said leasehold agreement."

True, there are no words of intention, but only of exercise of the right, also, no reference to the 60 day notice of intention as set forth in the September 20, 1949 letter, and no fixing of a date 60 days or more in advance for the actual closing of the transaction. Do these omissions serve to permit appellee to escape her obligation when on May 29, 1958, some 62 days after the March 28, 1958 letter, appellant wrote that it was exercising its option and sending the check for the down payment as provided therein? Why isn't this a sufficient compliance with the 60 day notice provision? Appellee had known for more than 60 days of appellant's desires and efforts, and granting that appellee desired the notice so she could make such arrangements concerning her other business as would be required in the event of the exercise of the option, we can perceive of no reason why she should not have proceeded accordingly after March 28. Even though she may not have been required to close the transaction before 60 days had passed after she knew of appellant's intention, she must have been amply aware of this upon receipt of the March 28 letter, and when payment was tendered on May 29, pursuant to the agreement, there could be no proper basis for refusal.

However, if this were not a compliance, on April 25, 1958, appellant wrote appellee recounting what had gone before, returning the check for the down payment and stating that "the date of the exercise of said option shall be fixed and determined in the light of and in view of all matters hereinbefore set forth, our previous correspondence and conversations, the provisions of the Leasehold Agreement dated May 20, 1946, and any valid amendment thereof, our notice of Election to Exercise Option, and our letter of April 14, 1958, to the end that our actions shall constitute a timely and effective elec-

tion to exercise said option regardless of *whatever position you may take in at-tempting to prevent us from effectively and timely exercising said option.* All tenders made by us and notices given to you shall be construed and considered by you as continuing tenders and notices."

That appellee could not misunderstand the purpose and intention of appellant in sending the April 25 letter, we think is beyond argument. True, again, it did not say it was a notice of intention as distinguished from a present exercise, and neither did it fix a date 60 days in advance for closing the transaction. Nevertheless, it was clear in its language that appellants intended and were trying to exercise the option and was notice to appellee of this fact.

■ Thereafter, on July 5, 1958, being 71 days later, appellants wrote again enclosing the down payment check, and stating, "you have been given written notice by Eagle Tail, Inc., of our intention to exercise the option to purchase as contained in the Leasehold Agreement dated May 20, 1946 as amended by letter to you on September 20, 1949. You have had more than sixty days notice of this intention to purchase. Accordingly we hereby exercise the right and privilege of purchasing the leased premises * * *" To our minds, appellant had done *everything reasonably required of it* under the terms of the option as modified by the letter of September 20, 1949. To hold

otherwise would have the effect of negativing the legitimate intention and purpose of the parties as expressed in their agreement through subservience to form. The law does not require this. Appellee can not be permitted to take refuge in technicalities to escape her clearly expressed commitments and appellant's honest efforts to perform. Bonde v. Weber, 6 Ill.2d 365, 128 N.E.2d 883.

Appellant argues that the 60 day notice provision was not a condition precedent to its right to exercise the option, but was simply a covenant or promise. In the view we take of the case, namely, that appellant did all that was required under the agreement and letter of modification, it is not necessary for us to resolve this point.

■ Although many cases are cited by counsel on both sides of the argument, we are impressed that the only rule which we need notice is that stated in Blain v. Staab, 10 N.M. 743, 65 P. 177, where it is held that where by the terms of a contract the intent of the parties is clear and free from ambiguity and doubt, the intention must govern rather than the strict signification of the language employed. In Hughes v. Samedan Oil Corporation (C.C.A. 10) 166 F.2d 871, 872, it is stated that courts "are primarily interested in giving effect to the intention of the parties, and not to the technical verbiage *used to express it," and in Bonde v. Weber,* supra [6 Ill.2d 365, 128 N.E.2d 888], the following language is found:

"Contracts will, if possible, be made operative to effect the intention of the parties, and this principle is equally applicable to contracts for deeds, leases, and leases coupled with options to purchase."

The closest case to the instant one on its facts that we have been able to find is Rice v. Sinclair Refining Co., 256 Ala. 565, 56 So. 2d 647, 649. That case involved a lease for 10 years with an option to renew for 5 years and a purchase option " 'at price of $9,750.00, to be exercised at any time during the granted term of this lease or any extension thereof.' * * * provided Lessee shall give Lessor not less than sixty (60) days' notice of Lessee's election to exercise this purchase option." The lease was extended for the 5 year option period and was to expire on June 8, 1951. On February 8, 1951, lessee served notice that it was exercising the option. Lessor declined to recognize the notice and on March 5, 1951, so notified lessee. On March 22, 1951, lessee gave a second notice insisting on all rights under the previous notice. No reply to the second notice was received, and on May 18, 1951, suit for specific performance was instituted.

The following is quoted from the opinion of the court:

"Appellants take the position that the option to purchase was not exercised within the terms of the sixty days provisions contained therein. It is argued that the date or event which the notice is to precede must be and is lessee's election to exercise the purchase option, otherwise the purchase option is ambiguous and of no effect. It is pointed out that the notice of February 8, 1951 did not give at least 60 days notice of lessee's election to exercise the option, but by its terms 'elects to and does hereby exercise the option.' It is further pointed out that the lessee did not await the expiration of 60 days period for exercising the option, for without waiting 60 days from February 8, 1951, the lessee gave the notice of March 22, 1951, and then filed suit within 57 days from this last notice.

"We are not impressed with this position. It is true that the phrase in the purchase option 'not less than sixty (60) days notice of lessee's election to exercise the purchase option' is ambiguous when considered alone because it fails to state what date or event the 60 days in question is to precede. But by the very terms of the contract the notice given on February 8, 1951, established the relationship of vendor and purchaser between the parties. * * *"

Compare Sinclair Refining Co. v. Allbritton, 147 Tex. 468, 218 S.W.2d 185, 8 A.L.R.2d 595; Holt v. Stofflet, 334 Mich. 272, 54 N.W.2d 593, 55 N.W.2d 170; Bonde v. Weber, supra; Lack v. Western Loan & Building Co., 9 Cir., 134 F.2d 1017.

**394**

We are convinced that appellant's conduct was a compliance with the intention of the parties as expressed by them and that it is entitled to have the agreement enforced. The trial court erred in concluding otherwise, and its judgment is accordingly reversed and the cause remanded with instructions to enter judgment for appellant granting relief as prayed in the complaint.

It is so ordered.

COMPTON, C. J., and CHAVEZ, J., concur.

CARMODY and NOBLE, JJ., not participating.