414 P.2d 223

Bennie M. PADILLA and Julia Sanchez Padilla, Plaintiffs-Appellees,

v.

Lupita Sanchez SAIS and Desiderio Sais, Defendants-Appellants.

No. 7769.

Supreme Court of New Mexico.

May 9, 1966.

John D. Murphy, Albuquerque, for appellants.

McRae, Ussery, Mims, Ortega & Kitts, William E. Snead, Albuquerque, for appellees.

COMPTON, Justice.

The plaintiffs sought a determination of their rights under certain lease-option agreements to purchase real property. The defendants denied the validity of any lease and option to purchase, and affirmatively alleged, among other things, that the lease-option agreements had been cancelled, rescinded and forfeited, if such instruments had ever existed. From a judgment ordering the defendants to convey their interest in the property to the plaintiffs, the defendants prosecute this appeal.

The issues arose out of the following facts: On February 20, 1953, Mrs. Julianita Sanchez, a widow and sole owner of approximately 13 acres of land in Bernalillo County, entered into a share-crop lease of the land, effective from January 1, 1953 to January 1, 1961, with her granddaughter Julia Sanchez Padilla and the latter's husband, the appellees here. The lease was recorded on March 16, 1953, and provided that the lessees would pay as rent:

> "One-half (½) of all alfalfa and other crops on said leased premises. Lessees agree to furnish the seed, fertilizer and necessary repairs all at their own expense and the crops raised shall be divided between the Lessor and Lessee on a share and share alike basis."

and provided further:

> "It is mutually agreed by and between the parties hereto that in consideration

of the Lessees' entering into this Lease, the Lessor hereby grants them the option to purchase the above described Real Estate at any time during the life of this Lease upon consideration that the Lessees pay the sum of $3,500 to Lupita Sanchez Sais, a married woman, as her sole and separate estate."

Lupita Sanchez Sais, mentioned in the lease, is also a granddaughter of the lessor and twin sister of Julia Sanchez Padilla. Lupita Sanchez Sais and her husband are the appellants here.

On February 21, 1953, the day following the execution of the lease, Julianita Sanchez, the lessor, quitclaimed all her right, title and interest in and to the property in question to third persons who, simultaneously therewith, quitclaimed the property back to Julianita Sanchez and her granddaughters, Julia Sanchez Padilla and Lupita Sanchez Sais, as joint tenants. These instruments were recorded on October 22, 1953. The evidence is conflicting as to whether the appellants had actual knowledge of either the lease of February 20, 1953, or of the deed by which Lupita Sanchez Sais was named as joint tenant with her grandmother and sister.

On May 14, 1953, after the reconveyance, Mrs. Sanchez and the Padillas entered into a second lease, identical to the first one, except the latter lease reduced the option purchase price set forth in the first lease from $3,500.00 to $2,300.00, and provided further that the former lease was thereby rescinded, cancelled and superseded. The appellant, Lupita Sanchez Sais, had knowledge of both leases on May 14, 1953 as she was requested to join in signing the second one but refused.

The appellees were in possession of the property at all material times. The lessor, Julianita Sanchez, died in January, 1956. Thereafter, in 1957, the appellees paid to the appellants one-half share of the profits from the 1956 crop. No further profits were made. The evidence indicates that sometime in 1958 or 1959 the appellees ceased farming the land, but remained in possession and paid the taxes. It also appears that sometime during this period the appellees attempted to exercise the option to purchase the property for $2,300.00 without success. In March, 1959, they again attempted to exercise the option to purchase for $3,500.00 but without success, and as a result this action was brought. They deposited with the court the maximum amount required for the exercise of their claimed option.

The pertinent findings of fact read:

"8. That said lease [of February 20, 1953], Plaintiffs' Exhibit A, was in full force and effect from the date of its commencement until December 29, 1960.

"9. That on December 29, 1960 the Plaintiffs Bennie M. Padilla and Julia Sanchez Padilla exercised the option con-

tained in said lease and paid into the registry of this Court $3,500.00 for payment to the Defendant Lupita Sanchez Sais as provided by said option.

\* \* \* \* \* \*

"12. \* \* \* and that on February 21, 1953, there were conveyances executed and the title was vested in Julianita Sanchez, Julia Sanchez Padilla and Lupita Sanchez Sais, as joint tenants, subject to the lease executed and the option executed on February 20, 1953.

\* \* \* \* \* \*

"14. That on May 15, 1953, Julianita Sanchez, acting alone as lessor, attempted to execute a lease and an option to the Plaintiffs.

"15. That the purported lease and option of May 15, 1953 was null and void and of no effect."

The appellants challenge the sufficiency of the evidence to support the court's findings and contend that its conclusions are based upon an erroneous theory of law.

■ The appellants contend (a) that the lease-option agreement had been terminated prior to the tender made by appellees by reason of the ownership in joint tenancy by Julia Sanchez Padilla, and (b) that the latter lease-option agreement by its own terms had effectively cancelled, rescinded and superseded the prior one. They rely on Tri-Bullion Corp. v. American Smelting & Refining Co.,

58 N.M. 787, 277 P.2d 293, wherein it is stated that as a general rule when the same party becomes the owner of both a larger and a smaller estate in the same property, the estates merge and the smaller one becomes extinct. This case, we think, supports the appellees' position rather than that of the appellants. Obviously, here, the parties to the two estates were not the same. The lessor estate for a term of years was in Julia Sanchez Padilla and her husband as lessees, while the greater estate or joint tenancy interest was in Julia Sanchez Padilla alone, as her sole and separate property. See also 51 C.J.S. Landlord and Tenant § 257, p. 894, and cases cited in Tri-Bullion Corp. v. American Smelting & Refining Co., supra.

The appellants contend further that the lease of May 14, 1953, cancelled and rescinded the lease of February 20, 1953, thus creating a new and independent estate for years by which the lessor bound only her undivided interest therein and, therefore, the option to purchase for $2,300.00 applied only to her interest. This contention is also without merit. Such a holding would do violence to the intention of the parties. The lease of May 14, 1953, provided:

"It is mutually agreed by and between the parties hereto that that certain Lease dated the 20th day of February, 1953 by and between the same parties which was recorded on the 16th day of March,

1953, in Book D 236, Record of Leases, Page 31, is hereby rescinded, canceled *and superseded by this Lease for the reason that the Lessor has discovered that the property was over priced and the Lessor desires to give the Lessees an option under the same terms and conditions except that the consideration involved should be reduced to $2,300.00."* (Emphasis supplied)

Obviously, the purpose of the creation of the joint tenancy was to ensure title to the property in the two granddaughters of Julianita Sanchez upon her death should the option not be exercised. The evidence is uncontroverted that this was the intention of Julianita Sanchez and that she intended to favor Julia over Lupita.

 As we view the second lease, its sole purpose was to substitute it for the first one in order to reduce the option purchase price. There is no testimony or other evidence that the parties concerned intended otherwise, or that they intended to terminate or change the relationship created by the terms of the original lease of February 20, 1953. We think the evidence warranted the finding of the trial court that the second lease was a nullity and that the first one remained in full force and effect. Suffice it to say that where the intention of the parties is clear and free from ambiguity and doubt, that intention must govern. Such has been the principle announced in cases where the court was called upon to construe the language contained in lease-option agreements. Eagle Tail, Inc. v. Orris, 69 N.M. 386, 367 P.2d 700; Stanisich v. State Highway Commission, 141 Mont. 144, 375 P.2d 1019; and Texas Co. v. Butler, 198 Or. 368, 256 P.2d 259. We think this principle applies equally here. It follows that the rights of the appellant, Lupita Sanchez Sais, were subject to the outstanding lease of February 20, 1953.

The appellants claim that by failing to farm the land in 1958 or 1959, the appellees breached the lease-option agreement and thereby forfeited any option they may have had. This claim of error is not well founded. The method provided in the lease for its termination is as follows:

"AND IT IS EXPRESSLY UNDERSTOOD AND AGREED between the parties aforesaid, that if the rent above reserved, or any part thereof, shall be behind or unpaid on the day of payment whereon the same ought to be paid as aforesaid, or if default shall be made in any of the covenants or agreements herein contained to be kept by the lessee, lessee's executors and administrators, it shall and may be lawful for the lessor, lessor's heirs, executors, administrators, agents, attorney or assigns, at lessor's election, to declare said term ended and into the said premises or any part thereof, either with or without process of

law, to re-enter, and the said lessee, or any other person or persons occupying, in or upon the same, to expel, remove and put out, using such force as may be necessary in so doing, and the same premises again to repossess and enjoy as in its first and former state, * * *"

■ It is well settled that where a lessor is given an election to terminate a lease on default of its covenants and to declare the term ended, absent a re-entry or some other unequivocal act on his part to terminate the lease, it remains in full force and effect. Reynolds v. Earley, 241 N.C. 521, 85 S.E.2d 904; Tseka v. Scher, 135 Conn. 400, 65 A.2d 169; Shannon v. Jacobson, 262 Mass. 463, 160 N.E. 245; Gradle v. Warner, 140 Ill. 123, 29 N.E. 1118; 3 Thompson on Real Property, § 1111, p. 382; 32 Am.Jur., Landlord and Tenant, § 848, p. 720. Compare Shultz v. Ramey, 64 N.M. 366, 328 P.2d 937 and Darr v. Eldridge, 66 N.M. 260, 346 P.2d 1041, 77 A.L.R.2d 1052. No claim is made in this case that an election to terminate the lease was ever made. Even if we were to assume a breach of its covenants, the lease remained in full force and effect.

■ Appellants urge that the court erred in failing to make certain requested findings and conclusions. We have examined the tendered findings and conclude that they are either evidentiary or are contrary to those made by the court. Having deter-mined that the court's findings are supported by substantial evidence and that they support its conclusions, there was no error in refusing findings and conclusions to the contrary. Herrera v. C & R Paving Co., 73 N.M. 237, 387 P.2d 339.

The judgment should be affirmed. It is so ordered.

CARMODY, C. J., and CHAVEZ, J., concur.