**McHUGH, et ux v. CONFORTI, et ux.**

No. 74-14475.

Circuit Court, Broward County.

November 5 1976 and February 9, 1977.

16

William E. Sadowski of Helliwell, Melrose & DeWolf, Miami, for the plaintiffs.

Burton Young of Snyder, Young, Stern, Barrett & Tannenbaum, North Miami Beach, for the defendants.

GEORGE RICHARDSON, Jr., Circuit Judge.

*Final judgment November 5 1976:* This cause came before the court for trial without a jury, the court having heard evidence and argument from all the parties is now prepared to rule and enter this opinion and final judgment in this cause —

## Findings of fact

1. The court has jurisdiction over the parties and subject matter hereto.

2. On or about July 14, 1969 the plaintiffs leased from the defendants certain premises located in Broward County (described in paragraph 3 of the complaint) for a term of five years for a total rental of $96,000, plus certain cost of living expenses to be paid as provided in Exhibit 'C' of the lease agreement.

3. The lease, which was introduced into evidence, was in writing and duly witnessed and acknowledged.

4. Paragraph 24 of the lease vested in the plaintiffs/lessees an option to purchase the premises in question, providing as follows —

> Lessee has a non-assignable option to purchase the premises, provided the lease is in good standing, at any time during the original or option term of this lease for the sum of $190,000 payable as follows: $10,000 to be deposited with the Lessor as a deposit at the time of the exercise of the purchase option; $30,000 upon closing, which shall be thirty days after the delivery of an abstract showing good and marketable or insurable title in Lessor to a party designated in notice of the exercise of the option; and the balance of $150,000 to be secured by a purchase money mortgage to be amortized in equal monthly installments over a period of fifteen years with interest at eight percent (8%). PROVIDED, HOWEVER, if the option is exercised during the renewal term, Lessor shall not be required to take any part of the purchase price as a purchase money mortgage. Prepayment allowed without penalty.

5. Paragraph 17 of the lease provided that time was of the essence as to all of its terms and conditions.

6. Exhibit 'C' to the lease agreement provided for an annual payment, above and beyond the monthly rents, which payment was geared to increases in the consumer price index. According to Exhibit 'C' this payment was to be *computed,* based upon the

consumer price index, as of August 1 of each calendar year, with the payment itself becoming due on January 2 of the following year.

7. During 1972, the plaintiffs erected an additional building on the leased property. It is abundantly clear from the evidence that defendant Sam Conforti had full knowledge of the plaintiffs' plan to construct an improvement, the actual construction of same as well as the existence of the completed building, but made no objection thereto. The evidence clearly shows that at no time prior to plaintiffs' exercise of the option to purchase did Conforti declare a default under the lease due to the construction of the improvement.

8. On or about July 2, 1973 the plaintiffs elected in writing to exercise the option and did all those things necessary in order to advise the defendants of their election, including payment to defendants of the sum of $10,000. The court finds that the plaintiffs' exercise of the option was valid and legal in all respects and in compliance with the terms and conditions of the business lease as well as paragraph 24 thereof. (In their answer the defendants admitted the plaintiffs' exercise of the option and their receipt of the deposit.)

9. The court finds that the defendants accepted the $10,000 deposit and have retained the deposit at all subsequent times.

10. At the time the plaintiffs notified the defendants of their exercise of the option the plaintiffs requested the defendants to provide them with an abstract for examination. The court finds that the defendants have at all relevant times failed, neglected and refused to provide the abstract to the plaintiffs, contrary to the requirements of the option clause and their obligations under same.

11. The court finds that the plaintiffs have duly performed all the conditions of said contract on their part except insofar as they have been prevented by the acts of the defendants from proceeding to a closing on said transaction.

12. The court finds that the plaintiffs were ready, willing and able to perform said contract on their part when they exercised the option and that they have continued to stand ready, willing and able to perform said contract at all relevant times.

13. On October 24, 1974 the plaintiffs filed the instant action, in which they sought, *inter alia,* specific performance of the option contract.

14. Since their exercise of the option to purchase the plaintiffs have continued to remit the sum of $1,664 per month to the defendants, up to and including the September 1976 payment. These payments total $64,896 through September 1976.

15. The equities are with the plaintiffs and against the defendants. The defendants have not done equity and are before the court with unclean hands. The plaintiffs are entitled to the relief they have sought.

## Conclusions of law

16. The option to purchase vested in the plaintiffs by paragraph 24 of the business lease constituted a continuing offer by the defendants to sell the subject property to the plaintiffs upon an exercise of the option. Upon plaintiffs' exercise of the option the option ceased to exist and a mutually binding and enforceable contract for sale came into being. *Orlando Realty Board Bldg. v. Hilpert*, 93 Fla. 954, 113 So. 100 (1927).

17. Where an option to purchase is contained in a lease agreement, the relationship of the parties upon the exercise of the option by the lessee changes from that of landlord/tenant to that of vendor/vendee. *Gautier v. Lapof*, 91 So.2d 324 (Fla. 1956), and *Cities Service Oil Co. v. Viering*, 404 Ill. 538, 89 N. E. 2d 392 (1949).

18. Upon their exercise of the option on July 2, 1973 the plaintiffs' status changed to that of vendee and they became the equitable owners of the real property in question.

19. The relationship having been changed to that of vendor/vendee by the exercise of the option, the defendants/vendors were not entitled to collect rent or lease payments from the plaintiffs subsequent to the exercise and during the defendants' delay in presenting an abstract and closing the transaction. See *United States v. Bethlehem Steel Co.*, 215 F. Supp. 62 (D. Md. 1962); *Manzy v. Elliot*, 22 N.W. 2d 142 (Neb. 1946); *Todd v. Stewart Sand & Material Co.*, 34 P. 2d 105 (Kan. 1934); cf., *330 Michigan Avenue, Inc. v. Cambridge Hotel, Inc.*, 183 So. 2d 725 (Fla. 2nd Dist. 1966). (The subject business lease does not contain a specific provision allowing the collection of rent subsequent to an exercise of the option, cf., *Cities Service Oil Co. v. Viering,* supra)

20. The plaintiffs are relieved of and from any obligation, if any they had, to make monthly payments to the defendants from and after the date of entry of this judgment.

21. The court finds and holds that the plaintiffs shall be obligated to pay to the defendants only that portion of the annual cost of living payment referred to in paragraph 6 of this judgment which would have become due on January 2, 1974 (had the plaintiffs not exercised their option) pro-rated as of the date the option was exercised, to wit: $4,995.43.

22. Among the defenses raised by the defendants is the contention that the plaintiffs are barred from seeking specific performance under the doctrine of laches. The court finds and holds that this defense is not available to the defendants. In order for the defendants to invoke this doctrine they must show that they have performed or offered to perform their obligations under the agreement. *Thoelke v. Morrison,* 172 So.2d 604 (Fla. 2nd Dist. 1965). The defendants have neither performed nor offered to perform (or even alleged same) their obligations under the option clause. Moreover, in a case with facts analogous to those in the instant case, it has been held that where a vendee pays a portion of the purchase price and goes into possession of the property, mere delay by the vendees in instituting suit or in paying the remainder of the purchase price will not defeat an action by the vendees for specific performance on the ground of laches, no matter what length of time elapses. *Tate v. Pensacola Gulf, Land and Development Co.,* 37 Fla. 439, 20 So. 542 (1896).

23. The defendants further defend on the ground that there was a failure of a condition precedent to a valid exercise of the option (which, it should be noted, is inconsistent with their admission that the option was exercised), to wit, that the lease was not in good standing on July 2, 1973 because the improvement of 1972 had been constructed without the *written* permission of the defendants. The facts do not support this position. The plaintiffs properly contend that the defendants are estopped by virtue of their knowledge of the construction and improvement and total failure to object to it. Moreover, defendants' continued acceptance of monthly payments from the plaintiffs, with their knowledge of the existence of the building, constitutes a waiver by the defendants of any lease provision requiring written permission for construction. *Tollins v. Dutch Inns of America, Inc.* 244 So. 2d 467, 470 (Fla. 3rd Dist. 1970), appeal dismissed 247 So. 2d 427 (Fla. 1971). Beyond the foregoing, and perhaps most importantly, the defendants did not declare a breach of the lease *prior to* the plaintiffs' exercise of the option. The plaintiffs' exercise of the purchase option may not be defeated where a default was not declared prior to the exercise. *Padilla v. Sais,* 76 N.M. 247, 414 P. 2d 223 (1966).

24. The defendants' contention that the plaintiffs' failure to pay the cost of living increment which would have become payable on January 2, 1974 (absent the exercise of the option) constitutes a failure of a condition precedent to a valid exercise of the option does not have merit because the obligation to pay, if any, could not have arisen prior to January 2, 1974, which was *after* the exercise of the option.

25. Relative to the defendants' defense of waiver and estoppel, (which appears to be limited in scope to the plaintiffs' demand for

damages) the court finds and holds that the facts do not warrant application of either doctrine as against the plaintiffs' claim. The weight of the evidence supports the conclusion that Mr. McHugh did demand the abstract on numerous occasions between the time the option was exercised and the commencement of this ligitation. In fact, on July 22, 1974 the plaintiffs demanded *in writing* that the abstract be delivered within five days. The abstract has never been delivered. The defendants were not prejudiced.

26. The plaintiffs have at all relevant times been ready, willing and able to perform the contract on their part.

It being the judgment of the court that the plaintiffs have proven their case by the greater weight of the evidence and that the manifest weight of the evidence is against the defendants as set forth above, it is ordered and adjudged as follows —

1. The defendants shall deliver to the plaintiffs, *within ten days* from date of entry of this judgment, an up-to-date abstract showing good and merchantable or insurable title, covering the property in dispute.

2. The defendants shall specifically perform the terms of paragraph 24 of the business lease, executed by the plaintiffs and defendants on July 14, 1969, which option was exercised by the plaintiffs on July 2, 1973, and complete the transfer of the property according to the terms of the said paragraph 24, except that the amount of the purchase money mortgage will be according to paragraph 3 herein.

3. The total of the monthly payments made by the plaintiffs to the defendants since the exercise of the option, totaling $64,896, shall be applied in the following manner —

    a. The first $30,000 shall be credited against the additional payment required of the plaintiffs at the time of closing.

    b. Second, $4,995.43 of the remaining balance shall be credited against the cost of living increment which the court has found is owed by the plaintiffs to the defendants (see paragraph 21 above).

    c. Property taxes shall be prorated from July 2, 1973, to date.

    d. Finally, the remaining balance (after the credits allowed in sub-paragraphs a. and b. above) shall be credited against the purchase price of the property thereby reducing the principal amount of the purchase money mortgage, if any, given by the plaintiffs to the defendants at the time of closing.

4. Except as otherwise provided above, defendants have failed to prove the claims asserted in their counterclaim. Judgment is hereby entered against the defendants on all other parts of their counterclaim.

5. The court retains jurisdiction of this cause for the purpose of making such further orders and judgments as may be necessary and proper to enforce the terms of this judgment as well as the terms of paragraph 24 of the business lease. Jurisdiction is also reserved for the assessment of costs.

*Order on rehearing, February 9, 1977:* Upon consideration of the defendants' petition for rehearing, and the court having reviewed the record, re-examined the legal authorities submitted by the parties, and having heard argument of counsel, it is the opinion of the court that since the plaintiffs are to be legally deemed as purchasers in possession, defendants would be entitled to mortgage interest credit and other usual closing credits from the date that the plaintiffs exercised the option to purchase, viz, July 2, 1973, and accordingly the court has concluded that the defendants' petition for rehearing should be granted in part, and that the court's final judgment entered herein on November 5, 1976, should be modified and clarified and, as hereinafter modified and clarified, reaffirmed. Therefore, it is adjudged —

(1) That the defendants' petition for rehearing is granted, in part.

(2) That the decretal paragraphs numbered 2 and 3 of the final judgment heretofore entered on November 5, 1976 are vacated and set aside with the following substituted in their stead —

2. The defendants shall specifically perform the terms of paragraph 24 of the business lease, executed by the plaintiffs and defendants on July 14, 1969, which option was exercised by the plaintiffs on July 2, 1973, and complete the transfer of the property according to the terms of the said paragraph 24, all in accordance with paragraph 3 herein.

3. The monetary calculations that must be made by the parties to effectuate the closing of the purchase and sale of the subject property shall be as of the date of July 2, 1973. The purchase price for said real property is $190,000. The "rental payments" of $1,600 each made by the plaintiffs to the defendants shall be treated and applied as installment mortgage payments commencing as of August 4, 1973. The plaintiffs are to receive the following credits against the purchase price of $190,000 (as of July 2, 1973):

(a) $10,000 paid by plaintiffs to the defendants as and for a deposit on the purchase and sale of the subject property on July 2, 1973;

(b) $1,600 paid by the plaintiffs to defendants on July 2, 1973.

From the balance of the purchase price due of $178,400 (as of August 4, 1973), plaintiffs made thirty-eight payments to the defendants of $1,600 each, the last payment being made on September 4, 1976. When the said last payment was made, there was an amortized principal balance due defendants from plaintiffs on the purchase price in the sum of *$160,706.56*, all in accordance with the amortization schedule appended hereto and made a part hereof. Plaintiffs are entitled to an additional credit for the sum of $2,496, representing the sales tax paid by the plaintiffs on the said "rental payments" (which sums were paid by the defendants to the state of Florida, and if returned by the said taxing authority, the funds shall be retained by the defendants).

On the amortized balance of the purchase price due defendants from plaintiffs, the defendants are entitled to the additional sums:

| | |
|---|---|
| Taxes paid by the defendants on the subject property from July 2, 1973, to July 31, 1975: | $ 3,991.13 |
| Cost of living increase as allowed by the court as of January 2, 1974: | $ 4,995.43 |
| Insurance premiums paid by defendants on the subject property: | $ 1,706.00 |
| Interest on the amortized balance of $160,706.56 from September 4, 1976, to December 31, 1976: | $ 4,156.34 |
| Total additional sums due defendants | $ 14,848.90 plus interest from January 1, 1977, to date of closing. |

To recapitulate, the court finds the following due the defendants from the plaintiffs for the purchase and sale of the subject property as of December 31, 1976:

| | |
|---|---|
| Balance of amortized principal balance due as of September 4, 1976: | $160,706.56 |
| Additional credit allowed to defendants: | $ 14,848.90 |
| Total | $175,555.46 |
| Credit to plaintiffs for sales tax: | $ 2,496.00 |

BALANCE DUE DEFENDANTS FROM
PLAINTIFFS AS OF DECEMBER 31, 1976: ............... $173,059.46

*Closing Date.* The sale of the subject property shall take place on the 17th day of February, 1977.

*Cash to Close.* Plaintiffs shall pay to defendants at time of closing the sum of $30,000 in cash or in cashier's check, plus or minus the normal closing prorations and interest credit from January 1, 1977, to date of closing.

Balance of Purchase Price. The balance of the purchase price shall be by way of purchase money mortgage which will be in the principal sum of $143,059.46 (this sum may be adjusted in the event the defendants pay the real property taxes for the year 1976 prior to closing, and, if so, that payment shall be added to the principal mortgage balance).

(3) In the event the plaintiffs fail to make the necessary payments and execute the mortgage in favor of the defendants as heretofore ordered, plaintiffs' request for specific performance relief shall be deemed denied, and the plaintiffs' complaint considered dismissed.

(4) Except as hereinabove modified and clarified, the defendants' petition for rehearing is denied.