[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON REQUEST FOR PREJUDGMENT REMEDY
A hearing was held on a lessor's claim for a prejudgment remedy against the guarantor of a lease. The claim advanced was for six months of unpaid rent at the rate of $4000 per month with a claim for accrued interest and other charges added to the base rent claim. The months involved run from April 1996 through September 1996. A notice to quit was filed in the beginning of May 1996 on the premises and a judgment entered in August 1996.
The guarantor has raised various defenses to the claim CT Page 13300 arguing that the lease was terminated by a notice to quit so as to greatly reduce the guarantor's obligation to pay unpaid "rent" to the lessor, the security deposit should be applied to any claim by the lessor, and that the unreasonable actions of the lessor in refusing the lessee permission to sublet the premises resulted in a substantial set off to any claims being made by the lessor against the guarantor.
In our state it appears to be the rule that a notice to quit terminates the lease, Bridgeport v. Barbour Electronics, Inc.,16 Conn. App. 574, 585 (1988); Sandrew v. Pequot Drug Inc.,4 Conn. App. 627, 631 (1985), Thompson v. Coe, 96 Conn. 644, 651 (1921). The only exception would be a situation where the notice was defective or after service of the notice the tenancy is reinstated, Tucker v. American Insurance Co., 1993 WL 34441
(Conn.Super.). Here there is no claim the notice was defective and the tenancy was not reinstated — the eviction proceeding commenced by the notice to quit proceeded to judgment and the judgment stipulation to resolve that case explicitly did not reinstate the lease.
There was nothing equivocal about the notice to quit, cfTseka v. Scher, 135 Conn. 400, 404 (1949), it demanded immediate possession and there is nothing to indicate that after the notice was served the lessor did some act that could be taken as an indication that the notice to quit did not express an unequivocal intention on the landlord's part to terminate the lease. It is noted in Am Jur that the making of a new lease after a notice is given to vacate the property or the lessor's subsequent agreement with the tenant for a continuance of possession is in effect a withdrawal of the notice to quit unless the agreement is to let the tenant remain in possession temporarily for some purpose of the tenant, 49 Am.Jur.2d § 276, page 257, citing Arcade Inc.Co. v. Gieret, 109 N.W. 250 (Minn), Jorver v. Borner, 116 A. 520 (Penn). The August stipulation here which formed the basis for the motion for judgment in the eviction action only provides for use and occupancy for a few months apparently for the tenant's convenience. And in any event it would be incongruous to hold that an actual motion for judgment in an eviction case where judgment is granted somehow constituted a waiver or withdrawal of the notice to quit which was a predicate of the eviction action which went to judgment.
The Court concludes then on the basis of the evidence presented that the notice to quit here terminated the lease. That CT Page 13301 having been established the question becomes what effect does this have on the guarantor of the rent against whom this prejudgment remedy is sought. In 49 Am.Jur.2d "Landlord and Tenant" at § 821, page 670 it says:
 "As a general rule, unless the parties otherwise intended, a contract of guaranty . . . for the payment of rent to accrue during the term of the lease does not obligate the guarantor . . . to pay for the use and occupation of the premises by the tenant after the termination of the lease by a notice to quit . . ."
Nothing in the guaranty's language indicates that the parties had an intention at odds with the just quoted principle of law. The guaranty is entitled a "Lease Guaranty" and throughout its language talks of the guarantor's obligation as running to the "rent due" and any arrears. The last sentence of the guaranty says it shall not apply to any "rent" due under any renewal term of "this lease". This guarantee concerned itself only with the guarantee of rent payments under an operative lease. There is no language in the guaranty that binds the guarantor to pay rent for whatever period the lessee may hold over after the expiration of the lease; the lease itself contains no language, operating as a covenant, which requires the lessee to pay rent not only for the period of the lease but also for such further time as the lessee should occupy the premises.
Here the lessor claims he is entitled to a prejudgment remedy for the "rent" money he did not receive from April 1, 1996 through September 1996. The rent was $4000 per month and the lessor claims late charges and interest. Given the just completed analysis the only "rent" monies the lessor could be entitled to under the guaranty would be for the months of April and May, May being the month in which the notice to quit was served. This position is arrived at through a purely legal analysis.
Now the court must determine whether pursuant to § 52-278d(a) of the general statutes there is probable cause established based on the facts presented at the hearing to justify a prejudgment remedy and if so what the amount of that remedy should be. It has been said that "Probable cause is a flexible, common sense standard. It does not demand that a belief be correct or more likely true then false." Texas v. Brown, 460 U.S. 730 (1983); cf. VillageLine Corp. v. Children's Store, 31 Conn. App. 652, 657, 658 (1993). The latter case cited the language in an earlier case that said: CT Page 13302
 "[t]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action as such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." Wall v. Twomey, 52 Conn. 35, 36 (1884).
As to the April claim for rent, the court cannot conclude that probable cause has been established. The lessor testified that that month's rent was not paid but the notice to quit mentioned the May rent as the rent that was unpaid and that claim apparently was the stated reason why the notice to quit was filed. The September 20, 1996 demand letter by the lessor's attorney to the guarantor only states that $565 of the April rent remained due and owing. More importantly, when the August stipulation is read providing the basis for the motion for judgment in the eviction action, there is apparently no agreement to pay for any monies due for unpaid rent during the month of April 1996 — both parties were represented by lawyers who prepared the stipulation. Based on this conflicting evidence that goes directly to the plaintiff's own claim for April rent, the court cannot find probable cause for such a claim.
That leaves the obligation on the guaranty to cover the unpaid May rent of $4,000. The plaintiff requests that under the guaranty he is entitled to have added to this amount late charges and interest. Language in the Am. Jur. article previously referred to states that a rent guaranty must be interpreted strictly against the guarantor. Why this should be so where a commercial lease is involved is not clear and this is especially questionable where the lessor drew up the lease. In any event, even if this rule of strict construction were to apply against the guarantor, application of such a rule does not allow a court to add language to a commercial contract. When commercial parties enter into a contract, they should, absent misrepresentation or perhaps overwhelming bargaining power on one side, be held responsible for protecting their own interests and not be permitted to place reliance on after the fact torturing of contract language by some court operating on a self-invented notion of equity to favor one side over the other. Here, paragraph two of the lease is entitled "Term and Base Rent." Subparagraph B states the rent is $4,000 for the lease term of November 1, 1994 to October 1, 1998. Subparagraph D says when "any rental payment" is not received by the lessors by the tenth CT Page 13303 day of the month, there will be a late fee of $100 and "overdue payments" shall accrue interest at a rate of 1 1/2% per month. But "overdue payments" refer to overdue "rental payments." They are not by definition a part of any rent or rental payments. Also, the guaranty itself states the guarantor's obligation will be no greater than $72,000. That figure is easily divisible by $4,000 into an obligation for 18 months of unpaid rent at $4,000 per month. If that figure assumed late charges and accrued interest on unpaid rent, how on earth would the parties calculate when the period that would establish a maximum claim of $72,000 ran out in terms of weeks and months? Would it depend just on when the lessor decided to bring his action? Would he or she have to bring it in a reasonable time to forestall the accrual of interest? What's a reasonable time in this context? It makes more sense to interpret the guaranty as not representing an agreement by the parties that the guarantor would have to cover late charges or the accrual of interest on unpaid rent.
As a result of this reasoning the only claim that the lessor could have for a prejudgment remedy would be for the May rent in the amount of $4,000. But the court will now discuss whether the lessor-plaintiff is entitled to a prejudgment remedy in that amount. A security deposit of $8,000 was given by the lessee to the lessor to guaranty the performance by the lessee of all its obligations under the lease which of course would include an obligation to pay rent.
Paragraph 17 of the lease provides that the lessee shall be obligated to pay the reasonable expenses of the lessor incurred to enforce the obligations of the lease or if the lessor becomes involved in any litigation arising out of the lease. The court believes this would allow the lessor to "invade" the security deposit for the attorney's fees and other reasonable expenses associated with the eviction action because of nonpayment of the May rent which did result in a judgment. Here, such expenses according to the September 20, 1996 letter delivered to the guarantor by the attorney for the lessor amounted to approximately $5,600.
That leaves $2400 of the security deposit remaining. The lessor claims this amount should not be applied to reduce the guarantor's obligation. In addition to attorney's fees and costs incurred in the eviction process, a lessor can also deduct from the security deposit, which would otherwise be applied to reduce an unpaid rent claim, the repair cost of any damages caused by CT Page 13304 the lessee.
Although a claim for damages was made here, the testimony offered provided no basis for the court to conclude what the exact nature of that damage was and whether the lessee was responsible for it. Therefore, the only appropriate deduction from the security deposit was the previously mentioned figure of $5,600, at least on the basis of this record. All of these means that some $2,400 of the security deposit plus accrued interest of 3% on that amount (see par. 24 of lease) which would amount to an additional $380 approximately should be applied at this stage of proceedings to offset any claim from the guarantor for unpaid rent. That would reduce the claim against the guarantor to approximately $1,200.
The lessee claims a further offset due to the fact that the lessor unreasonably refused to allow the lessee to sublet the property to two parties and therefore the lessee claims as a result that it has established a set off of $132,000 to any claim by the lessor. This, it is claimed, is a violation of paragraph 9 of the lease. If there is such a violation of the lease, query whether it could be used to reduce any otherwise valid claim against the guarantor? In any event, the court has read the transcript and it is not clear that the possible sublets to Maytag and Enterprise were firm offers by these entities to sublet rather than merely proposals or offers to discuss possible subletting which the lessee presented to the lessor as possible opportunities.
The court therefore concludes a prejudgment remedy of $1,200 is appropriate and with possible interest and future cost the total prejudgment remedy granted is $1,500.
Corradino, J.